FREDERICA H. ELWOOD et al., Appellants, *v.* HYMAN GOLDMAN, Respondent.

**Real property — contract of sale — contract examined and held that vendee agreed to repay to vendor the proportionate part of the taxes paid by the latter for that part of the fiscal year remaining after the conveyance of the property.**

A proposed contract for the purchase of real estate drawn by the vendee, after providing that the property should be conveyed free and clear from all liens and incumbrances, except a mortgage and leases therein specified, included the clause: "If offer is accepted possession of said premises is to be given to me on delivery of deed on said June 1st, 1912, at which time all taxes, insurance premiums and water rates are to be adjusted to and including May 31st, 1912." Under the charter of the city in which the property is situated all taxes, which include local assessments and water rates for the year 1912, were due and payable on the first day of May, and county taxes were payable before the fifteenth day of April. The city tax

as well as other taxes if unpaid were liens on the property when the contract was made. Upon the delivery of the deed and under the clause above quoted the defendant allowed to and credited plaintiffs with the unearned insurance premiums and water rates from the first day of June but refused to adjust and allow the seven-twelfths of the city taxes for the year 1912, the proportionate part of such taxes from June first. By agreement between the parties the sale was completed by omitting the item for such taxes without prejudice to the rights of plaintiffs to enforce the collection thereof, which plaintiffs seek to do in this action. *Held,* that, under a reasonable interpretation of this clause of the contract, the defendant intended to and did agree to adjust the city taxes in the same manner in which the other items were to be and were actually adjusted by apportionment, and, hence, that he is liable herein for the same proportionate amount of the city taxes.

*Elwood* v. *Goldman,* 158 App. Div. 805, reversed.

(Argued March 7, 1916; decided April 11, 1916.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 12, 1913, sustaining defendant's exceptions, ordered to be heard in the first instance by the Appellate Division after direction of a verdict in favor of plaintiffs at Trial Term, and granting defendant's motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Merton E. Lewis* for appellants. The terms of the contract required the purchaser to pay seven-twelfths of the city tax for the year 1912. (*Lathers* v. *Keough,* 189 N. Y. 583.)

*Percival D. Oviatt* and *Louis E. Lazarus* for respondent. At the time the contract of sale was signed the tax in question was a debt against the vendors personally and was also a lien on the land. (*Matter of Babcock,* 52 Hun, 142; *Rundell* v. *Lakey,* 40 N. Y. 513; *Hagner* v. *Hall,* 10 App. Div. 586.) The word "adjust" as used in the contract means that the accounts of the parties with reference to taxes, insurance premiums and water rates

were to be settled and the balance struck and paid, and there was no intention that the use of the word should modify the prior agreement that the premises were to be free and clear of all incumbrances. (*Mayor, etc.,* v. *H. F. Ins. Co.,* 39 N. Y. 45; *Berger* v. *Crist,* 121 App. Div. 483; *Mandel* v. *Hess,* 57 Misc. Rep. 240.) In construing the contract the intention is to be collected, not from detached parts of the instrument, but from the whole of it. (*Ward* v. *Whitney,* 8 N. Y. 442.)

HOGAN, J. Plaintiffs in this action were owners of an office building and the land upon which the same was located, the building being known as the Elwood Memorial Building, situate on the northeast corner of Main and State streets in the city of Rochester. On the 9th day of May, 1912, the defendant prepared and forwarded to plaintiffs a proposition in writing to purchase the property, which offer in substance stated that he, defendant, would pay to plaintiffs a sum therein stated for the building and the land upon which the same stood, which was referred to by location of lot number and measurements, and as payment therefor defendant offered to pay a stated sum upon the acceptance of the offer, a further sum in cash upon the delivery of the deed, and to assume and agree to pay a mortgage, then a lien upon said premises, held by the Monroe County Savings Bank of Rochester, and to give his bond and mortgage conditioned to secure the payment of the balance of the proposed purchase price and to pay the mortgage tax upon the mortgage so to be given by him. The proposal then contained the following clause:

" If this offer is accepted you are to furnish at your own expense warranty deed of said premises and abstracts of and tax searches to date of transfer showing good title and premises free and clear of all liens and incumbrances except the said mortgage held by the Monroe County Savings Bank, and also except the lien of the following leases

* * * ," and then followed a list of leases, ten in number, giving the name of the lessee, the location of the leased premises, the annual rental and the expiration of the several leases; then followed a general clause that the defendant would assume leases of other offices then occupied, expiring March 31st, 1913.

The last clause of the proposition, which follows that above quoted, is: "This offer is good for one day from date, and, if accepted, sale to be completed at Number 904 German Insurance Building on or before June 1st, 1912. If offer is accepted possession of said premises is to be given to me on delivery of deed on said June 1st, 1912, at which time all taxes, insurance premiums and water rates are to be adjusted to and including May 31st, 1912.

"This offer if accepted to bind the heirs, successors, administrators, executors and assigns of the parties hereto."

On the same day, May 9th, 1912, the plaintiffs herein accepted the proposition made by the defendant in writing.

About one week or ten days after the 9th of May, 1912, an attorney for the plaintiffs delivered to the attorney for the defendant an abstract of title from the date of the Monroe County Savings Bank mortgage, the title back of that being upon a separate search which the defendant's then attorney had received from the bank. On May 31st one of the attorneys representing the plaintiffs called upon the then attorney for the defendant and delivered to him the clerk's search disclosing the payment of all taxes upon the premises and also a statement in writing showing defendant debtor for the amount of the purchase price as stated in the contract, for seven-twelfths of the city tax of 1912, for unearned insurance premiums, fire, boiler and liability insurance, and a credit for the amount of the mortgage assumed by defendant, for the amount of the second mortgage to be made by defendant, for interest on

the first mortgage from January 1st, 1912, to June 1st, 1912, a small item of rent paid to plaintiffs by a tenant for the month of June in advance, and the amount of cash to be paid by defendant and thereupon tendered a deed of the premises.

The account was satisfactory to the then attorney for the defendant except the item of $1,593.69, representing seven-twelfths of the city tax for the year 1912. By agreement between the parties the deal was closed by omitting the above item for taxes without prejudice to the rights of plaintiffs to enforce collection of the same which the plaintiffs sought in this action.

The courts below while reaching different conclusions held that the language employed in the agreement was free from ambiguity and that the interpretation of the same was a question of law for the court. In that conclusion we concur.

The charter of the city of Rochester (Laws of 1907, chapter 755) relating to the assessment, lien and collection of taxes so far as important in this case provides: The fiscal year of the city commences on the first day of January (section 138); the annual tax rolls are prepared by the assessors on or before the 15th day of January in each year and include all real and personal property liable to taxation, water frontage tax, expenses of sprinkling, maintenance of streets and parks and cleaning of walks done pursuant to ordinances of the common council, and must be delivered to the city clerk on or before the first day of April in each year (section 188); the common council having acted upon the annual estimate (section 105) must meet on the first day of April in each year or if that day be Sunday then on the next day following for the purpose of confirming the annual tax rolls and levying the annual taxes and must within five days confirm such tax to the amount set forth in the budget adopted by it on all the real and personal property in the city according to the statement and valuation of the same

set forth in the annual tax rolls for the *current year*, and must levy and assess the water tax (sections 107, 108, 109). Assessments for local improvements appear in a separate assessment roll (section 191). All annual taxes, all local assessments and all water rates assessed by the city together with interest, fees, etc., are and remain until actually paid a lien upon the land, tenement or real estate on which or·in respect to which the same have been made from the time of the passage of the ordinance of the common council levying the same in the case of annual taxes and from the time of the confirmation by the common council of the rolls in the case of local assessments and from the time the same becomes due in the case of water rents (section 199). The city treasurer must on the first day of May in each year proceed to collect taxes from the several persons named in the annual tax roll (sections 165, 166, 167, 168). Local assessments, water rates, etc., added to the tax roll become a part of the annual tax (sections 172–176).

The tax rolls for county taxes after equalization and correction of the same by the board of supervisors and insertion of the tax levied and assessed by that board are required to be delivered to the county treasurer with a warrant annexed to each roll, on or before January 15th in each year and the tax is payable before April 15th (section 209).

Under the city charter, the city tax for the year 1912 as well as other taxes, if unpaid, were liens upon the premises in question on May 9th, 1912, when the contract between the parties was made. Under the first clause of the agreement above quoted the plaintiffs were to furnish a tax search showing the premises free and clear of all liens. That obligation required plaintiffs to remove the lien not only of the city taxes for 1912 but of any additional unpaid tax by a payment thereof, otherwise a tax search would fail to disclose the absence of liens for taxes on the property. Had the contract

terminated with that clause the payment of the city tax for 1912 would devolve on plaintiffs.

The defendant prepared the form of the contract and invited the plaintiffs to accept the same. The defendant having chosen the words employed in the writing prepared by him must be held to a strict interpretation of them, rather than plaintiffs who merely accepted them. If there is doubt as to the meaning of the words employed, the defendant is responsible for it as they were his own. The language used was as follows:

" If offer is accepted possession of said premises is to be given to me on delivery of deed on said June 1st, 1912, at which time all taxes, insurance premiums and water rates are to be adjusted to and including May 31st, 1912."

Under the city charter, city taxes, local assessments and water rates were liens upon the property. Defendant required all such liens to be discharged and shown to have been satisfied by a tax search. That general requirement was, however, followed by the particular clause quoted above which so far as taxes were concerned was incompatible with the general requirement and must be construed as an exception of some tax or taxes to be adjusted to and including May 31st, 1912. The nature of the adjustment to be made must be determined from the language employed and the action of the parties in relation thereto. What was to be adjusted on May 31st? " All taxes, insurance premiums and water rates." What adjustment was to be made of insurance premiums ? The plaintiffs were privileged to assign the insurance of the three classes held by them to defendant, but there remained an unearned premium upon the policies. The defendant in the adjustment allowed plaintiffs the amount of the unearned premium from June 1st, 1912. The water rates were adjusted by plaintiffs paying the same to June 1st, and defendant's assumption of same thereafter. I assume that defendant believed that it would be inequitable to require plaintiffs to pay water

rates for the business block during the remainder of the year for the benefit of defendant. The parties adjusted the insurance premiums and water rates proportionately, the plaintiffs bearing the proportionate share down to the date of the transfer of title and the defendant assuming the same from that date forward. Defendant is presumed to be familiar with the provisions of the city charter, viz., that city taxes were assessed for the fiscal year 1912; that they were payable May 1st; that a city tax would not again be levied until early in the year 1913. Defendant was to occupy the premises for the remaining seven months of the year for which plaintiffs had paid the taxes. That the defendant should pay an allotted amount of the taxes during his occupancy of the premises would be equitable with the allotment made as to insurance premiums and water rates which were apportioned on that basis. The words "taxes, insurance premiums and water rates" were grouped together, "taxes" were to be adjusted, "insurance premiums" were to be adjusted, "water rates" were to be adjusted. Insurance premiums and water rates were adjusted by the parties by an apportionment of the same as stated. Notwithstanding the defendant agreed to adjust taxes he refused to do so. Under the language of his proposition he intended to adjust taxes, and a reasonable interpretation of his language leads to the conclusion that he intended to adjust them in the same manner in which the other items were to be and were actually adjusted by apportionment, which results in holding him liable for a proportionate amount of the city tax.

The order and judgment of the Appellate Division should be reversed and the judgment of the Trial Term affirmed, with costs to the appellants in the Appellate Division and this court.

HISCOCK, CHASE, CUDDEBACK and POUND, JJ., concur; WILLARD BARTLETT, Ch. J., and CARDOZO, J., dissent.

Ordered accordingly.