Evelyn Building Corporation, Appellant and Respondent, *v.* The City of New York, Respondent and Appellant, and La Rocca Construction Corporation, Respondent.

502

(Argued October 15, 1931; decided November 24, 1931.)

*Harry B. Chambers, Joseph B. Kenny* and *Harry H. Chambers* for plaintiff, appellant and respondent. In holding that the city is regarded as the owner from the time of entry, the courts below disregarded settled law and thereby deprived plaintiff of a substantial item of damage. (*Matter of Van Etten* v. *City of New York,* 226 N. Y. 483; *Amerman* v. *Dean,* 132 N. Y. 355; *Coventry* v. *McCreery,* 144 App. Div. 68; *Hay* v. *Hubbell,* 125 App. Div. 60; *Fisher* v. *Hall,* 41 N. Y. 416; *Mitchell* v. *Bartlett,* 51 N. Y. 447; *Satterly* v. *Dewick,* 129 App. Div. 701; 197 N. Y. 590; *Pappenhein* v. *M. E. R. Co.,* 128 N. Y. 436; *McGean* v. *M. E. R. Co.,* 133 N. Y. 9; *Mitchell* v. *Village of White Plains,* 91 Hun, 189; *Bunke* v. *New York Telephone Co.,* 110 App. Div. 241; 188 N. Y. 600; *De Camp* v. *Bullard,* 159 N. Y. 450; *Hellenberg* v. *Schmidt,* 81 Misc. Rep. 157; *Lamb* v. *Lamb,* 146 N. Y. 317; *City of New York* v. *Fink,* 130 Misc. Rep. 620.) The trial court and the Appellate Division erred in holding that the buttresses and piers might lawfully be used as a foundation, and in refusing to allow plaintiff damages for excess foundation cost. (Greater New York Charter, § 71; *City of Mt. Vernon* v. *N. Y., N. H. & H. R. Co.,* 232 N. Y. 309; *Kahabka* v. *Schwab,* 205 App. Div. 368; 236 N. Y. 595; *Acme Realty Co.* v. *Schinasi,* 154 App. Div. 397; 215 N. Y. 495; *Hayman* v. *Steich,* 114 N. Y. Supp. 603; 118 N. Y. Supp. 1113; 201 N. Y. 578; *Jennings* v. *Baumann,* 214 App. Div. 361; 243 N. Y. 532; *Matter*

of Rapid Transit R. R. Commrs., 197 N. Y. 81; *Strohm* v.
*N. Y., L. E. & W. R. R. Co.*, 96 N. Y. 305; *Brooklyn
Trust Co.* v. *City of New York*, 109 Misc. Rep. 593;
198 App. Div. 595; 243 N. Y. 520.) The Board of
Transportation is the agent of the city of New York in
the construction of subways in the city of New York, and
the defendant city is liable for the acts of the Board of
Transportation, its agents, servants and employees
within the scope of their duties. (*Litchfield Construction
Co.* v. *City of New York*, 244 N. Y. 251; *Sun Printing &
Publishing Assn.* v. *Mayor*, 152 N. Y. 257; *Augustine* v.
*Town of Brandt*, 249 N. Y. 198; *Stoddard* v. *Village of
Saratoga Springs*, 127 N. Y. 261; *Buffalo & Hamburgh
Turnpike Co.* v. *City of Buffalo*, 58 N. Y. 639; *Lee* v.
*Village of Sandy Hill*, 40 N. Y. 442; *Seeley* v. *City of
Amsterdam*, 54 App. Div. 9; *Jewhurst* v. *City of Syracuse*,
108 N. Y. 303; *Munk* v. *City of Watertown*, 67 Hun, 261;
*Spier* v. *City of Brooklyn*, 139 N. Y. 6; *Teall* v. *City of
Syracuse*, 120 N. Y. 184; *Salt Lake City* v. *Hollister*, 118
U. S. 256; *New York City* v. *Sheffield*, 4 Wall. [U. S.] 189.)
The liability of the city of New York for depriving
property abutting the street of lateral support in the
course of subway construction is absolute. (*Matter of
Rapid Transit R. R. Commrs.*, 197 N. Y. 81; *Susswein*
v. *Bradley Contracting Co.*, 184 App. Div. 852; *Bergen*
v. *Morton Amusement Co.*, 178 App. Div. 400; 226
N. Y. 665; *Riley* v. *Continuous Rail-Joint Co.*, 110
App. Div. 787; 193 N. Y. 643; *Gillies* v. *Eckerson*, 97
App. Div. 153.) In the construction and operation of a
subway, the city of New York is not using the street for
a street purpose, and is acting in a proprietary and not a
governmental capacity. (*Matter of Rapid Transit R. R.
Commrs.*, 197 N. Y. 81; *Litchfield Construction Co.* v.
*City of New York*, 244 N. Y. 251; *Bradley* v. *Degnon
Contracting Co.*, 157 App. Div. 237; *Sinsheimer* v. *Under-
pinning & Foundation Co.*, 178 App. Div. 495; 226 N. Y.
646; *Peck* v. *Schenectady Ry. Co.*, 170 N. Y. 298.)

*Arthur J. W. Hilly, Corporation Counsel (Frank R. Rubel, Charles V. Nellany* and *Charles Blandy* of counsel), for defendant, respondent and appellant. The city of New York is not liable for the acts of the Board of Transportation in the commission of a tort. (*Matter of McAneny* v. *Board of Estimate & Apportionment,* 232 N. Y. 377; *Degnon Construction Co.* v. *City of New York,* 202 App. Div. 390; *People ex rel. New York Dock Co.* v. *Delaney,* 192 App. Div. 734; *Halleran* v. *City of New York,* 132 Misc. Rep. 73; 226 App. Div. 785; *Litchfield Construction Co.* v. *City of New York,* 216 App. Div. 517; *Heim* v. *McCall,* 239 U. S. 175; *Maximilian* v. *Mayor,* 62 N. Y. 160.) The statutes vest the construction of the railways in the Board of Transportation as the administrative agent of the State. (*O'Brien* v. *City of New York,* 182 App. Div. 810; *Tone* v. *Mayor,* 70 N. Y. 157; *Halleran* v. *City of New York,* 132 Misc. Rep. 73; 226 App. Div. 785.) If the court finds there was an agreement that the Board of Transportation would pay and had authority to pay, so as to bind the city of New York under the Transit Act, then any damages accruing to plaintiff are to be paid by the defendant-respondent under its contract for indemnification, as the contractor constructing the subway is absolutely liable to the city of New York and to the plaintiff for such damages as it has caused to plaintiff by the acts described in the complaint, and which may have been proved on the trial. (*Schnaier* v. *Bradley Contracting Co.,* 181 App. Div. 538; *8th & 9th Avenues Rys. Co.* v. *City of New York,* 223 App. Div. 316.) The plaintiff cannot recover upon the theory of trespass, as consent was given by plaintiff to the Board of Transportation and the contractor, to enter upon its land and construct the buttresses and piers in the manner in which they were constructed, with acquiescence and knowledge of the plaintiff. (*Crosdale* v. *Lanigan,* 129 N. Y. 604; *Selden* v. *Delaware & Hudson Canal Co.,* 29 N. Y. 634; *Ketchum* v. *Newman,* 116 N. Y. 422.)

*James F. Dealy* and *Enos Throop Geer* for defendant-respondent. The city, having ordered the contractor to construct unnecessary buttresses upon plaintiff's land, cannot now hold the contractor on the claim of the plaintiff against it for damages by reason of the construction of such buttresses. (*Callanan* v. *K., C. & L. C. R. R. Co.*, 199 N. Y. 268; *Ogden* v. *Alexander*, 140 N. Y. 356; *First Nat. Bank* v. *Chalmers*, 144 N. Y. 432; *Meyer* v. *Lathrop*, 73 N. Y. 315; *Galle* v. *Tode*, 148 N. Y. 270; *Helgar Corp.* v. *Warner Features*, 222 N. Y. 449; *Newman* v. *Frost*, 52 N. Y. 422; *Meyer* v. *Amidon*, 45 N. Y. 169; *Borough Const. Co.* v. *City of New York*, 200 N. Y. 149; *Sundstrom* v. *State of New York*, 213 N. Y. 68; *Horgan* v. *Mayor*, 160 N. Y. 516; *Brainard* v. *N. Y. C. R. R. Co.*, 242 N. Y. 125; *Hartigan* v. *Casualty Co.*, 227 N. Y. 175.) The defendant-respondent is not liable to the city for any excess foundation costs which the city may have to pay to the plaintiff for the reason that such costs are excluded under the contract from the liability of the contractor. (*Brooklyn Trust Co.* v. *City of New York*, 198 App. Div. 595.) The contractor is not liable to the city in any event either for the value of an easement to maintain the buttresses or for excess foundation costs, as the damage did not result from any fault, negligence or lack of skill on its part in the performance of its contract. (*Matter of Rapid Transit Commrs.*, 197 N. Y. 81; *Blockman* v. *Spreckles*, 135 Cal. 662; *Inge* v. *Bd. of Public Works*, 135 Ala. 187; *People ex rel. North* v. *Featherstonhaugh*, 172 N. Y. 112; *City of New York* v. *Bklyn. Alcatraz Asphalt Co.*, 84 Misc. Rep. 572; *Smyth* v. *City of New York*, 203 N. Y. 106; *Rigney* v. *N. Y. C. & H. R. R. R. Co.*, 217 N. Y. 31; *Wilson* v. *Costich Co.*, 231 App. Div. 346; 256 N. Y. 629; *New York Pneumatic Service Co.* v. *Cox Contracting Co.*, 201 App. Div. 33; 235 N. Y. 567; *Hale* v. *Ripton*, 197 App. Div. 926; 234 N. Y. 631.) The city is bound by the acts of the Board of Transportation. (*Litchfield Construction Co.* v. *City*

*of New York,* 244 N. Y. 251; *Degnon Contracting Co.* v. *City of New York,* 202 App. Div. 390; 235 N. Y. 481; *O'Brien* v. *City of New York,* 182 App. Div. 810; *Halleran* v. *City of New York,* 132 Misc. Rep. 73; 226 App. Div. 785; *Matter of Rapid Transit Commrs.,* 197 N. Y. 81; *Borough Const. Co.* v. *City of New York,* 200 N. Y. 149.)

HUBBS, J. This is an action for an injunction to restrain a continuing trespass upon plaintiff's real property, to compel its restoration to its former condition and for damages. At the commencement of the action the city of New York was the sole defendant. Subsequently, the construction corporation was brought in as a party pursuant to subdivision 2 of section 193 of the Civil Practice Act, upon motion of the city, so that in the event of a recovery by the plaintiff the city might have a judgment over against the construction corporation under an indemnity clause in its contract with the city.

The city was engaged in constructing a subway railroad under the surface of St. Nicholas avenue in front of plaintiff's real property. The work was being done by the defendant construction corporation (hereinafter referred to as the contractor) under a contract entered into between it and the city, acting through the Board of Transportation (hereinafter called the Board).

On May 24, 1928, when the subway had been excavated to a depth of sixty feet in front of plaintiff's premises, a rock slide occurred which precipitated the front of plaintiff's premises for a distance of 130 feet, comprising a square foot area of 1,760 feet, into the subway. It was wedge shaped, varying in width at the surface from 7 to 22 feet, and 60 feet deep. The slide occurred by reason of the excavation, which removed the lateral support from the rock and caused it to slip into the subway. At the place where the slide started there was a mud seam in the rock.

Without securing from plaintiff a right so to do, the engineers of the Board directed the contractor to erect piers on plaintiff's land according to plans prepared therefor by the Board. In accordance with such instructions, the contractor constructed on plaintiff's land eight concrete buttresses, 3 feet in width, extending from the face of the rock to the face of the subway, a distance varying from 8 to 15 feet and extending up, on an average, from the subgrade of the subway to within about $24\frac{1}{2}$ feet of the surface. A pier 3 feet square was constructed on the top of each buttress. These piers averaged about 9 feet in height. The average distance of the top of the piers from the surface of the street was about $15\frac{1}{3}$ feet. The buttresses were from 10 to 15 feet apart and the intervening space was filled.

It has been found that the buttresses and piers are permanent structures and that they were erected "in order to secure the work and safeguard the subway structure as completed." Testimony was introduced to the effect that the owner of the land contemplated the erection of an apartment house thereon; also that the slide would make it necessary to excavate to a depth of sixty feet in order to secure a safe and sufficient foundation for such a building, whereas, if the slide had not occurred, it would have only been necessary to excavate ten feet of top soil down to the rock, which would have constituted a safe and secure foundation. There was also testimony to the effect that the presence of the piers would interfere with the use of a sub-basement in any building thereafter erected.

The plaintiff sought to recover, as items of damage, the value of the easement of maintaining the buttresses and piers, the value of use and occupation of which he had been deprived, the value of the sub-basement space of which he would be deprived, and the amount of the increased cost of digging for foundations for any building to be erected on the lot. The learned trial court allowed

the plaintiff $5,967.50 on account of the easement and $2,500 for the expense of placing I-beams from the top of the piers to make a foundation for the building to be placed on the premises, and disallowed all other claims.

The proper measure of damages which should have been applied is stated in *Matter of Rapid Transit Railroad Commissioners (Joralemon Street)* (197 N. Y. 81), as follows: " We think that the proper measure of damages is the full value of the fee taken, subject to the public easement of passage, and, both as to naked abutters and those who own the fee, the amount, measured in money, of the physical injuries inflicted and those which with reasonable certainty will be inflicted upon the abutting property by interference with lateral support through the proper construction and operation of the road, including the rental value of the premises during the period, if any, while they are actually untenantable " (p. 107).

In determining the amount of damages caused by the trespass, the court should have considered the testimony in regard to the various items which go to make up such loss, such as the loss of the use of the property, the necessity of increased expense in excavating for foundations, the loss of sub-basement space on account of the presence of the buttresses and piers, and the value of the easement for maintaining buttresses and piers to be awarded in lieu of a mandatory injunction to remove the same, as it was found as a fact that they could not be removed. Finally, the amount allowed as damages should be the diminution in the market value of the whole property by reason of the injury.

The learned trial court failed to apply the proper measure of damages. It treated the case as one to condemn an easement and awarded damages on that basis, treating the city as the owner from the time of entry, and refused to consider the claim of the plaintiff that he had been deprived of the use of the property.

It also refused to consider the testimony as to increased

cost of foundations for a new structure, made necessary by the taking of the easement. It placed its refusal on the ground that the piers could be used as a support for I-beams, which might be used as a foundation and installed at an expense of $2,500, which amount was allowed as an item of damage.

The plaintiff was entitled to recover his loss, if any, because of deprivation of the use of his land up to the time of the trial. It was, therefore, error to treat the city as owner from the date of the slide. (*Matter of Rapid Transit Railroad Commissioners* [*Joralemon Street*], *supra.*)

It was also error to attempt to minimize plaintiff's damage growing out of the loss of lateral support by assuming that the piers could be used for the purpose of supporting I-beams which might be used as a foundation for a building. The city by removing the lateral support to plaintiff's land caused plaintiff damage. It cannot escape paying such damage by requiring plaintiff to use the piers in the manner indicated for a foundation to a building.

We do not mean to intimate that the plaintiff's damage should include all of the items mentioned. Consideration of the testimony offered in regard to them may present questions of fact.

It is urged by the city that it is not liable for the damage resulting from the slide since it was caused by the Board, in which, it alleges, the Rapid Transit Act (Laws 1891, ch. 4, as amended) vests the authority to construct the subway railroad as agent of the State. The act by subdivision 8 of section 23 provides: " The State of New York shall not be liable for injuries to persons or property in connection with any railroad or other construction which may be authorized under the provisions of this act, nor shall the state of New York be liable for any damages in any event for any act or omission of the public service commission." (Laws 1909, ch. 498, § 6.)

We deem the decision in the case of *Matter of Rapid Transit Railroad Commissioners (Joralemon Street) (supra)* a complete answer to such contention. It was decided in that case that an owner of land abutting the street in which the subway was and who did not own any part of the street had a legal right to the support of the land in the street; that the city in constructing the subway and the railroad occupied the position of a mere railroad company and its liability was that of a railroad company doing the same work in the same way; that the city was liable for all lawful damage to the abutting property caused by the proper conduct of the work, whether caused by the city directly " or indirectly by contracting with someone to do it " (p. 106). It would be strange, indeed, if the city could avail itself of the use of plaintiff's land to maintain its structures upon, after depriving the land of its lateral support, without being liable for the damage suffered. Private property cannot be so taken for a public use without just compensation. A city " cannot permanently appropriate private property either as a municipal government or as a railroad corporation without paying for it." (*Matter of Rapid Transit Railroad Commissioners [Joralemon Street], supra,* p. 97.) (State Const. art. I, § 6.)

The judgment in favor of the plaintiff must be reversed and a new trial had.

The city has appealed from that part of the judgment which dismissed its claim for judgment over against the contractor. The contract between the city and the contractor provided:

"Article XLV. The Contractor expressly admits and covenants that the drawings and specifications and other provisions of this contract, if the work be done without any fault or negligence on the part of the Contractor, do not involve any danger to the foundations, walls or other parts of adjacent, abutting or overhead buildings or structures or surfaces and the Contractor will at his own

expense make good any damage that shall, in the course of construction, be done to any such foundations, walls, or other parts of adjacent, abutting or overhead buildings or structures or surfaces. * * *

" It is the intention of the parties to this contract * * * that in addition to indemnifying the City against all claims for damages, the Contractor shall also be liable to the owners of adjacent, abutting or overhead property. * * *

"Article XLVII. The Contractor shall be solely responsible for all physical injuries to person or property occurring on account of the work hereunder, and shall * * * indemnify and save harmless the city from liability upon any and all claims for damages on account of such injuries to person or property * * * and from all costs and expenses in suits which may be brought against the city on account of any such neglect, fault or default. * * * "

Relying upon those terms of the contract, the city contends that the contractor is liable over to it upon any judgment that may be recovered in this action.

Section 29 of the Rapid Transit Act reads in part:

" 1. Every contract for the construction or operation of such road or roads shall provide by proper stipulations and covenants on the part of the said city, that the said city shall secure and assure to the contractor, so long as the contractor shall perform the stipulations of the contract, the right to construct or to operate the road as prescribed in the contract, free of all right, claim or other interference, whether by injunction, suit for damages or otherwise, on the part of the owner, abutting owner, or other person." (Laws 1906, ch. 472, § 6, amd. Laws 1909, ch. 498, § 12.)

Pursuant to that provision of the Transit Act, the city embodied in the contract the following provision:

"Article LI. The City hereby stipulates and covenants to and with the Contractor that the City will secure

and assure to the Contractor so long as the Contractor shall perform the stipulations of this contract, the right to construct the railroad as prescribed in this contract free of all right, claim or otherwise interference, whether by injunction, suit for damages or otherwise, on the part of any owner, abutting owner, or other person; but not including any interference, legal or otherwise, by patentees or persons claiming to be patentees of tools, methods or appliances."

We are called upon to construe those provisions.

Primarily the burden rests upon the city to secure, by condemnation or otherwise, the right to use any particular property for subway purposes. In constructing the subway and railroad the city acts " as a proprietor, not as a sovereign." (*Matter of Rapid Transit Railroad Commissioners* [*Joralemon Street*], *supra*, p. 96.) It is legally bound to pay full and just compensation for any land or easement which it takes, including the destruction of the easement of lateral support. The contract in question was prepared by the city and in case of doubt or ambiguity must be construed most strongly against it. A fair reading of the contract indicates that the duty rested upon the city to provide a right of way. The city, as between itself and the plaintiff, had no legal right to remove the lateral support to the land and place permanent structures thereon. It did have the legal right to excavate in the street, as the adjoining owners did not own the fee. It furnished that right of way to the contractor and the contractor expressly covenanted that in using that right of way " if the work be done without fault or negligence on the part of the contractor," it will " not involve any danger to the foundations, walls * * * structures or surfaces."

In doing the work damage did result, and that damage was within the contemplation of the parties when enter-

ing into the contract and was clearly and specifically assumed by the contractor.

In giving this effect to the contract, we do not hold of necessity that the city may recover from the contractor the full amount which the plaintiff may recover from the city. The evidence is consistent with the conclusion that even after the slide, there might have been adequate protection by reinforcing the walls of the subway or by other devices without acquiring an easement for piers and buttresses outside of the line of the road. The trial court refused to decide whether the easement was in truth necessary for the safety of the subway or of the adjacent property. If the city's insistence that an easement be acquired was wholly unnecessary, then the difference between the cost of such an easement and the cost to the contractor if the subway had been protected in some other way was not in truth damage resulting from the slide, and ought to be borne by the city instead of by the contractor personally.

It is possible that upon a new trial it may be found that the city engineer, acting as arbiter and in good faith, decided that the protection to be supplied required the contractor to do the work as it was done. If so, his determination would be binding upon the contractor. That question was not determined upon the trial.

Upon the appeal by the plaintiff the judgment should be reversed and a new trial granted, with costs to plaintiff to abide the event. Upon the appeal by the city of New York the judgment in favor of the defendant La Rocca Construction Corporation should be reversed and a new trial granted, with costs in favor of the city of New York against the construction corporation to abide the event.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgment accordingly.