GERALD J. SACKS, Respondent, v HARTFORD INSURANCE COM-
PANY, Appellant.

Second Department, May 14, 1979

**APPEARANCES OF COUNSEL**

*Clune, White & Nelson (John E. Trecartin* of counsel), for
appellant.

*Lowenthal, Landau, Fischer & Singer, P. C. (Judith R. Richman* and *Barry H. Singer* of counsel), for respondent.

### OPINION OF THE COURT

*Per Curiam.*

In this action plaintiff, Dr. Gerald J. Sacks, owner of a motor home which is the subject of a certain policy of insurance issued by the defendant, the Hartford Insurance Company, seeks to recover for its loss under the policy. The vehicle disappeared when the plaintiff's agent permitted a prospective customer to test-drive it. The policy provides coverage for loss caused by "theft or larceny", except where the loss is due to "conversion, embezzlement or secretion by any person in possession * * * under a bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance". The issue on the insurer's appeal is whether the loss of the vehicle under the circumstances herein was a covered risk.

The vehicle in question was purchased for $13,000 by plaintiff in December, 1974. In December, 1975 one Greenleaf, a professional golfer, advised plaintiff that he was about to join the Professional Golfers Association tour on the west coast during the winter. Inasmuch as plaintiff was desirous of selling his mobile home, it was agreed that Greenleaf would drive the vehicle to the tournaments involved and attempt to sell it for $13,500.

After Greenleaf had played in all the west coast tournaments without achieving any success in his efforts to sell the mobile home, he settled in Phoenix, Arizona, to try to negotiate a sale. He advertised the mobile home for sale in the local newspaper for three weeks. There were several responses to the advertisements each week.

In early March, 1976, a man named Barber expressed interest in buying the mobile home. Mr. Barber and his pregnant wife inspected the vehicle and went for a demonstration ride. The Barbers seemed interested in buying the mobile home. Mrs. Barber raised some questions about her children and the mobile home. Greenleaf followed the Barbers to their home so that the children could see the vehicle. The three children were asleep when they got there.

Barber suggested that he take the mobile home on an extended test-drive with his children beginning that night, a Friday, and throughout the next day. He convinced Greenleaf that he was a financially responsible person. He acceded to

Greenleaf's demand for a $1,000 check to cover any damage to the vehicle or lost time if the final decision was not to purchase the mobile home. The check was given and the mobile home was taken by the Barbers.

The next day, Saturday, Barber phoned Greenleaf and informed him that he had driven the mobile home to Flagstaff, Arizona, and that the vehicle's brakes were in an unsafe condition. He said he was having the brakes serviced and that his return to Phoenix would be delayed until Monday. Neither the Barbers nor the mobile home were ever seen again. There was no one in the Barber house in Phoenix on Monday and the bank refused to cash the $1,000 check. A neighbor of the Barbers told Greenleaf that the Barbers had packed their belongings on Sunday morning and left town. The matter was reported to the police.

The mobile home was insured by defendant at the time the loss occurred.

The policy provided "COMPREHENSIVE" coverage for "theft or larceny", except where the loss or damage was "due to conversion, embezzlement or secretion by any person in possession of a *covered automobile* under a bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance".

Special Term determined that the loss of the mobile home under these circumstances was a covered risk.

■ A wrongdoer who obtains possession of property by false representations as to his purpose or intention is guilty of larceny under the statute and at common law (Penal Law, § 155.05, subd 2, par [a]; cf. *People v Elfe,* 37 AD2d 208; *People v Soto,* 76 Misc 2d 491), and a loss sustained by the owner of the property under such circumstances is covered where the policy, as here, provides "comprehensive" coverage for loss due to "larceny" (see *Block v Standard Ins. Co. of N. Y.,* 292 NY 270; *Giannetto v General Exch. Ins. Corp.,* 10 AD2d 442).

It appears from the testimony of the plaintiff and Greenleaf that title to the vehicle was in the plaintiff's name except for a brief period when title was temporarily placed in the name of a prospective purchaser, one Johnson. Greenleaf testified that he gave Barber the keys but not the registration, that he did not discuss with Barber anything as to a lease, mortgage or conditional sale, and that Barber had not definitely agreed to purchase the vehicle when Greenleaf left it with him. Any question as to the credibility of witnesses was for the trier of the facts, in this case the Trial Judge sitting without a jury.

■ Assuming, *arguendo,* that the loss is not clearly outside the ambit of the exclusionary clause, it is at least ambiguous. It is fundamental that ambiguities in an insurance policy must be construed against the insurer, particularly as to ambiguities found in an exclusionary clause. The insurer has the burden of proving that the occurrence came within the exclusionary clause and that its own construction of that clause is the only one that could fairly be placed on it *(American Fid. Fire Ins. Co. v Pardo,* 32 AD2d 536; *Lipton, Inc. v Liberty Mut. Ins. Co.,* 34 NY2d 356). Even if the exclusionary clause were ambiguous, the appellant could not succeed on this record because it would not have met its burden of proving that the use was within the exclusionary clause and that its construction of the exclusionary clause is the only one that can fairly be placed upon it.

Accordingly, the judgment should be affirmed.

TITONE, J. P., SHAPIRO, MARTUSCELLO and MANGANO, JJ., concur.

Judgment of the Supreme Court, Westchester County, dated September 5, 1978, affirmed, with costs.