OPINION OF THE COURT
Albert M. Rosenblatt, J.
In this action, plaintiffs seek summary judgment for the sum of $50,000 as winners of a Super Zingo Sweepstakes promotion offered by the defendants, New York Daily News *2 and the D. L. Blair Corporation. Defendants cross-moved for summary judgment dismissing the complaint.
Based upon the pleadings, oral argument, and recorded conferences in chambers, both sides, in recognition of the narrowness of the issues, have agreed upon the controlling facts. Accordingly, all parties contend, and the court agrees, that the issue is entirely one of law, that no material factual dispute exists, and that one side or the other must be granted summary judgment.
The game closely resembles bingo, with the players submitting entry ballots. The correctly marked entries then go into a random drawing, for a top price of $50,000 and other, lesser amounts. The advertising in the paper is large scale, with the $50,000 figure leaping from the page, in print 1% inches high, bold enough to awaken even the most lethargic subway straphanger. The contract rules, in Lilliputian contrast, are in 1/16 inch lettering, dwarfed even by the size of regular newsprint.[1]
The plaintiff, Dorothy Johnson, filled out the entry form which appeared in copies of the New York Daily News of October 7,1981. She placed the name Shawn Nolley on the entry blank with the address at which they both resided. Dorothy Johnson is the grandmother and guardian of Shawn, who was then 14 years old.
She circled certain numbers and mailed the entry, by certified mail, to the proper address. Defendants. duly selected the entry at a drawing, for the $50,000 prize, and then telephoned the number listed on the entry form to tell the contestant the happy news that the entry was selected for the Super Zingo $50,000 sum.
Thereafter, the defendants informed the plaintiffs that there would be no payment because the entry form was declared to be in violation of rule No. 6 which, among other things, restricts the contest to those over the age of 18.
Defendants contend that Shawn was under 18, that payment is denied because the contest was not open to him, and that Dorothy Johnson, by listing her grandson’s name, *3 submitted an entry which was in violation of the rules. (By stipulation, it was agreed that Dorothy Johnson was the author of the entry and that she sent it with Shawn’s name printed thereon.)
The plaintiffs argue that an adult contestant who submits the winning form should not be penalized for an act of filial generosity by Dorothy in listing her grandson as payee on her entry form. In support, plaintiffs point out that in games such as the Irish Sweepstakes, contestants commonly submit entries with all sorts of names, ranging from pseudonyms to quaint expressions, with no peril because the winner is readily identifiable, with no effort or concern on the part of the contest payor.
The defendants, however, place a good deal of emphasis on certain language in rule No. 5, by which the defendant Blair is proclaimed to be the sole judge of winning entries and that its decisions are said to be “final.”
The defendants have furnished the court with four cases, all on this point (Wassyng v Disabled Amer. Veterans Serv. Foundation, 92 F Supp 275; Furgiele v Disabled Amer. Veterans Serv. Foundation, 116 F Supp 375, affd 207 F2d 957; Baez v Disabled Amer. Veterans Serv. Foundation, 13 FRD 330; Gillmore v Proctor & Gamble Co., 417 F2d 615), which stand for the undeniable proposition that absent fraud, gross mistake, irregularity, or bad faith, the decision of the contest judges is final.
To begin with, a court should not substitute its own view for that of the contest judge when it comes to such things as choosing winning jingles, wordsmanship, slogans, picture identification, matching clues, dot counting, or other examples typical of the genre (Jones v Fowler, 185 So 40 [La], notwithstanding). In those realms, the decisions of the contest judges must be unassailable even if they were to select a vapid jingle entry in preference to one of Shakespearian proportions. The court does not take defendants’ cited cases to hold anything more than that. When we are dealing, however, with the legitimacy — as opposed to content — of an entry, we are not in the zone of contest judging, but of contract law. It is the same sort of legal decision which must be made by a court in determining *4 whether a contestant is an excludable “family” member (e.g., Bryant v Deseret News Pub. Co., 120 Utah 241).
The defendant Blair cannot, by providing that its decisions are final, deny entrants access to courts and thereby invest itself, as contest promoter, with conclusive authority to adjudicate what are, in effect, legal questions of offer and acceptance.
In Long v Chronicle Pub. Co. (68 Cal App 171, 180-181), it was held that: “Assuming that the judges of the contest acted in the highest good faith with reference to their determination of the facts relative to plaintiff’s rights in the premises, they possessed no authority to decree that plaintiff should not have that to which she was legally entitled * * * It certainly cannot be lawful for one party to a contract, even by express terms thereof, to provide, in advance of any controversy growing out of the contract, that his judgment of the law regarding any question which may arise shall preclude the other party to the contract from contesting the same in a court of law or equity.”
Thus, in a prize-contest case, when the issue is one of compliance or noncompliance by the contestant, the courts have enforced and should enforce contractual awards in spite of contest rules which seek to reserve exclusive and “final” judgment to the promoter (Groves v Carolene Prods. Co., 324 Ill App 102; Holt v Wilson, 55 SW2d 580, 584 [Tex]).
When and if an entrant, acting in response to a public contest or prize offer, performs the required conditions of the offer in accordance with its published terms, it creates a valid contract under which the contestant is entitled to the promised reward (Holt v Rural Weekly Co., 173 Minn 337; Shapiro v Prudential Theatres, 68 Misc 2d 798, affd 75 Misc 2d 752; Hoff v Daily Graphic, 132 Misc 597; see, generally, 9 NY Jur, Contracts, § 33, p 561).[2]
Defendants do not claim — and there is no basis to believe — that the plaintiff grandmother, when inserting *5 Shawn’s name, had any intent to deceive or confuse anyone. Indeed, even under the strictest reading of the rules there appears to be no limitation on the number of names or type of name which may be inserted on any entry, or of any other provision which explains or restricts the use of a name or names (Pineiro v Nieves, 108 NJ Super 51, cert den 55 NJ 593). The rules are silent as to the use of maiden names, aliases, partnerships, d/b/a’s, I.T.F.’s, or even corporate names. If it was the intent of the defendant rule-drafter to flatly bar the use of any but one “given name” by one entrant, then it should have spelled out such prohibition in clear terms, as an express condition of compliance. Not having done so, the defendant, as author of the rules, must absorb an adverse construction, for it is axiomatic that the meaning and interpretation of fair doubts must be resolved against the party who prepared the contract (4 Williston, Contracts [3d ed], § 621, p 760; Evelyn Bldg. Corp. v City of New York, 257 NY 501, 513; Elwood v Goldman, 217 NY 585, 591), or prize contest form (Grove v Charbonneau Buick-Pontiac, 240 NW2d 853 [ND]; Schreiner v Weil Furniture Co., 68 So 2d 149, 152 [La]; Walsh v St. Louis Exposition & Music Hall Assn., 90 Mo 459).
It was not at all unreasonable for the plaintiff, Dorothy Johnson, to assume that she, like countless grandmothers before her in all manner of raffles, chances, sweepstakes, and drawings, could put down her grandson’s name without forfeiting the prize as punishment for exercising her maternal largesse (Pineiro v Nieves, 108 NJ Super 51, cert den 55 NJ 593, supra).[3]
It was also, one might add, defendant’s choice to print the $50,000 advertising figure in numbers approximately *6 22 times larger than contest rules which would be difficult for any grandmother — or, for that matter, any airline pilot — to read without a magnifying glass.
Moreover, because it is not uncommon for contestants — particularly unwarned ones — to enter the names of loved ones for drawings and raffles (Pineiro v Nieves, supra), the contest rule which calls for the entrant to “hand print your name” must, like any contractual term, be read in the context of the existing custom and usage (Edison v Viva Int., 70 AD2d 379).
In judging compliance in unilateral contracts, the court must apply reasonable standards rather than criteria so grudging or rigid that no entry could possibly withstand hypertechnical attack. Rule No. 2, for example, calls for the contestant to “circle” the matching numbers on the game forms. If the entrant were to circumscribe the numbers in squares or crosses, would that vitiate the ballot?
If the entry were to be sent by certified mail, in derogation of rule No. 5, woqld that be a fatal submission? Apparently not, for plaintiff’s envelope was sent by certified mail, without cavil by defendants.
Entrants are invited, under rule No. 7, to enter on “plain pieces of paper.” If the paper is not plain, but ornamented or adorned, it would scarcely affect the integrity of the entry, and it may be readily seen that not every defect will, in its triviality or immateriality, fail of compliance. The court holds that in this instance, the subject ballot fairly meets the test of acceptance by performance.
In so holding, the court is persuaded by the line of authority which has it that when an entry form is substantially compliant, a unilateral contract is spelled out, notwithstanding the existence of claimed defects which do not impair the integrity of the submission (38 Am Jur 2d, Gambling, p 298, n 8). The rule has been applied to prize contests, with results which support plaintiff’s position (Scott v People’s Monthly Co., 209 Iowa 503; Minton v Smith Piano Co., 36 DC App 137; 33 LRA [NS] 305; Barker v Lewis Pub. Co., 152 Mo App 706, supra).
*7 Plaintiff’s motion for summary judgment is therefore granted.

. The court does not, by these comparisons, imply that the defendants, in their use of “small print,” were seeking to trap contestants, or that they were otherwise acting in bad faith. On the contrary, there is every indication that the contest has been conducted entirely in good faith. The size of the print bears, however, on the issue of notice, offer and acceptance, and statutory construction, which the court deals with later on.

. The court is not unmindful of Endres v Buffalo Auto. Dealers Assn. (29 Misc 2d 756), but, with due deference, respectfully disagrees with its reasoning and result, which are contrary to Marceaux v V.F.W. Post 2130, 337 So 2d 923 [La]).

. Plaintiff Dorothy Johnson is not so disingenuous to suggest that she used Shawn’s name as a pseudonym for her own. Had she done so, she might well have argued, sly and transparent though it might be, that she had common-law right, without resort to judicial proceeding, to use any name she pleased, and that any contract entered into by her under the pseudonym is valid and binding (Matter of Snook, 2 Hilt 566), particularly where defendant, in its rules, has not prohibited the use of pseudonyms, assumed names (General Business Law, § 130 et seq.), corporate names, or fictitious names (see Barker v Lewis Pub. Co., 152 Mo App 706, 713, in which the offerer expressly prohibited fictitious names in its subscription contest). The plaintiff, however, has taken a more honorable course.