■ ANTHONY FAGNANI et al., Respondents, v AMERICAN HOME ASSURANCE COMPANY, Appellant. WARREN R. YOUNG et al., Respondents, v AMERICAN HOME ASSURANCE COMPANY, Appellant. — In two actions to recover under an aircraft accident insurance policy, the defendant in both actions, American Home Assurance Company, appeals from (1) an order of the Supreme Court, Westchester County (Beisheim, J.), dated February 17, 1982, which, *inter alia,* granted plaintiffs' motions for summary judgment; and (2) a judgment of the same court entered thereon on March 4, 1983. ¶ Appeal from the order dismissed (see *Matter of Aho,* 39 NY2d 241, 248). ¶ Judgment modified, on the law, by deleting the provisions awarding interest to plaintiffs from August 6, 1980, in the amount of $41,050.68; order dated February 17, 1982, modified accordingly. As so modified, judgment affirmed, and matter remitted to the Supreme Court, Westchester County, for reconsideration of the computation of interest in accordance herewith, and thereafter for entry of an appropriate amended judgment. ¶ When relying on an exclusionary clause, the insurer must show not only that its interpretation of the clause is reasonable, but that the clause cannot be reasonably interpreted in any other way (see *Sincoff v Liberty Mut. Fire Ins. Co.,* 11 NY2d 386; *American Home Assur. Co. v Hartford Ins. Co.,* 74 AD2d 224; *American Fid. Fire Ins. Co. v Pardo,* 32 AD2d 536). Plaintiffs have advanced, without resort to extrinsic evidence, a fair interpretation of the exclusionary clause in question under which it is inapplicable to

the facts of the case at bar. The defendant insurer, having relied for its defense solely upon this clause, cannot prevail at trial, and the granting of summary judgment to plaintiffs was therefore appropriate. ¶ Interest on the judgment should not, however, have been computed from the date of death, but rather from the date on which the cause of action for breach of contract accrued (CPLR 5001, subd [b]), which in this case is the date on which the insured was first entitled to demand payment. Under the terms of this policy, payment was due upon the receipt of written proofs of loss. If the insurer failed to provide such forms within 15 days of the giving of notice of the claim, however, the requirement would be deemed complied with upon the submission of "written proof covering the occurrence, the character and the extent of the loss for which claim is made". It can be inferred that the insurer did not provide the required form, since it is not contained in the record and its absence was not a basis for defense of this action. Interest will run, therefore, from either 15 days after the giving of notice of the claim, or the submission of the alternative proof, whichever was later. Because these facts do not appear in the current record, however, the matter must be remitted to the Supreme Court, Westchester County, so that they can be determined and the interest can be recomputed accordingly. O'Connor, Brown and Eiber, JJ., concur.

Titone, J. P., concurs insofar as the appeal from the order is dismissed but otherwise dissents and votes to reverse the judgment, vacate the order and remit the matter for a trial, with the following memorandum: In these actions to recover the proceeds of an insurance policy, the defendant insurance carrier appeals from a judgment entered in plaintiffs' favor upon motions for summary judgment. At issue is the construction of an exclusionary clause. Because both sides offered extrinsic evidence in connection with the motions, there should be a reversal. ¶ On August 6, 1980, plaintiffs' decedents, Stephen Fagnani and Brandon Young, were killed in a helicopter crash in the Gulf of Mexico. At the time, both were working for the summer as roustabouts on an offshore installation of the Ocean Drilling and Exploration Company (ODECO). Due to the threat of Hurricane Allen on the date of the incident, ODECO had procured several helicopters, owned and operated by Air Logistics, Inc., to make an emergency evacuation of the decedents and other employees from the offshore installations where they were working. One of these helicopters, number 95AL, which was carrying decedents and 10 other passengers in addition to its crew, crashed on the return voyage, resulting in the deaths of all on board. ¶ At the time of this incident, ODECO maintained a policy with defendant, insuring its employees for accidental death incurred in the course of transportation for business purposes, in the amount $200,000 per employee. By letter dated August 14, 1980, ODECO's "Benefits Supervisor" submitted claims to defendant on behalf of its deceased employees. Defendant then disclaimed liability on the basis of the following exclusion contained in the policy: ¶ "Such insurance as is afforded an Insured Person to which this Hazard H-3 applies, does not apply to any loss, fatal or non-fatal, caused by or resulting from injury sustained while the Insured Person is * * * ¶ "(6) *Flying in any Rotocraft being used for transportation of Oil Rig Crews to and from such rigs*" (emphasis supplied). ¶ Subsequently, plaintiffs commenced the instant actions to recover, as beneficiaries, the proceeds of the policy written by defendant. Defendant denied the material allegations of the complaints and asserted as affirmative defenses the above provision and another exclusionary clause. However, defendant appears to have abandoned its other defense and relies solely on the provision quoted above. ¶ In late 1982, plaintiffs separately moved for summary judgment, and for consolidation of the two actions. Plaintiffs Young essentially concurred in the affidavit of plaintiff Fagnani, and they all relied upon the deposition testimony of Charles S. Howe, currently ODECO's assis-

tant vice-president for insurance. ¶ Mr. Howe's testimony was essentially that in the oil business there is a distinction between a "drilling rig", which "is a mobile unit that goes on location and actually penetrates the earth and drills the oil well" and a "production platform", which services the well which results from drilling. According to him, the term "oil rig" means a drilling rig, and an "oil rig crew" is the crew that works thereon. Mr. Howe stated that decedents were "production roustabouts", or unskilled workers in the production department, and that neither they nor any of the other ODECO employees who were killed were involved in drilling. In addition, he testified that he had been informed that the helicopter that had crashed had stopped at platforms B, D and E before heading back to shore, all of which were involved in production work, and that decedents had been working on platform B. Mr. Howe claimed that ODECO had purchased the policy in question for the following reasons: "It was a management decision that some of the people that worked for our company are covered under various other laws in which they have the right to obtain what we consider to be large sums of money in the event of injury or death and others within the company do not have these rights, such as myself, being a staff employee working in the office, I don't have the [sic] specifically the Jones Act admiralty recovery, and so forth, that the rig crews have, and we felt they were amply compensated in the event of any tragedy and we wanted to cover those people, supervisory people, staff people and exclude the rig crews." ¶ In further support of their motion, plaintiffs also submitted: (1) a letter from Hugh Kelly, president of ODECO (and uncle of Stephen Fagnani), advising Stephen of his summer employment and describing the difference between the platform where Stephen would work, and a drilling rig; (2) the report of the National Transportation Safety Board with regard to this incident, which includes statements from the pilots of the other helicopters involved in the evacuation to the effect that helicopter 95AL picked up its passengers at platform PMI-77, which Howe testified was being worked on by Progress Marine, Incorporated, and not ODECO; and (3) an exchange of letters between ODECO and Marsh & McLennan, the insurance agent that had handled this policy with regard to the clause in question, indicating that it "will only exclude Roto-Craft when used for crew transfer between land and offshore drilling units". ¶ Defendant opposed the motions and cross-moved for summary judgment in its favor, submitting the following proof: (1) an affirmation of the attorney of record who apparently had no direct knowledge of the facts; (2) the report of the National Transportation Safety Board; (3) an excerpt from the deposition of air logistics' lead pilot to the effect that "Opco" was to tell the pilots which facility to fly to; (4) an excerpt from the Howe depositions to the effect that PMI-77 was being "work[ed] over"; (5) two affidavits indicating that other passengers on helicopter 95AL had been assigned by their employers "to work on an offshore oil rig" and (6) the affirmation of James J. O'Brien, defendant's underwriting manager, essentially stating that on the basis of the low premium it charged, defendant could not have intended to cover accidents such as the one which resulted in decedents' deaths. ¶ On the basis of this record, Special Term consolidated the actions for the purposes of these motions, granted summary judgment in favor of plaintiffs in the face amount of the policy ($200,000 per insured, together with interest from the date of death), and denied defendant's cross motion for summary judgment. The court reasoned that the existence of a question of fact as to the meaning of "oil rig" precluded summary judgment in favor of defendant, but that since all ambiguities in the policy are to be resolved against the insurer, plaintiffs were entitled to summary judgment. Judgment was thereupon entered in favor of plaintiffs. Defendant appeals. I would reverse. ¶ The interpretative principles applicable to insurance policies are, in the main, the same as those employed

in constructing contracts in general (e.g., *Molycorp, Inc. v Aetna Cas. & Sur. Co.,* 78 AD2d 510). Thus, while it is frequently said that an insurance contract must be strictly construed against the insurer (e.g., *Breed v Insurance Co.,* 46 NY2d 351, 353; *Sacks v Hartford Ins. Co.,* 68 AD2d 48, 51; *American Fid. Fire Ins. Co. v Pardo,* 32 AD2d 536), this amounts to no more than a restatement of the general principle that ambiguities in a contract are to be construed against the draftsman (e.g., *Evelyn Bldg. Corp. v City of New York,* 257 NY 501, 513). When the meaning of an insurance contract is plain and clear, courts may not strain to find an ambiguity that does not otherwise exist (1 Couch's Cyclopedia of Insurance Law [2d ed], § 15:85), and if the only reasonable construction is favorable to the insurer, it must be followed (*Government Employees Ins. Co. v Kligler,* 42 NY2d 863; *Hollander v Nationwide Mut. Ins. Co.,* 60 AD2d 380, 384, mot for lv to app den 44 NY2d 646). ¶ While the provision in issue is ambiguous — the policy contains no definition of the term "oil rigs" or "oil crews" — resolution of the ambiguity by summary judgment is, on this record, inappropriate. Both sides have submitted extrinsic evidence and, therefore, ascertainment of the parties' intent must be made by the trier of fact (*Hartford Acc. & Ind. Co. v Wesolowski,* 33 NY2d 169, 172). ¶ To be sure, an insurer has the burden of establishing that the occurrence comes within the exclusionary clause and that its own construction is the only one that fairly could be placed on it (*Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co.,* 34 NY2d 356; *Sacks v Hartford Ins. Co.,* 68 AD2d 48, 51, *supra*). But I cannot say, as a matter of law, that the defendant will not be able to sustain that burden. As in *Sheldon v Northeastern Fire Ins. Co.* (76 AD2d 860), there is a "question of fact as to the extent of the coverage intended by the parties, which must be determined at a plenary trial." ¶ Accordingly, I would vote to deny the motions for summary judgment.