THE PEOPLE OF THE STATE OF NEW YORK ex rel. J. ROMAINE BROWN, Respondent, *v.* LAWSON PURDY and Others, as Commissioners of Taxes and Assessments of the City of New York, Appellants.

First Department, January 10, 1919.

**Municipal corporations — city of New York — valuation of land by commissioners of taxes and assessments for purposes of taxation — consideration of assessment to be made against such land for benefits conferred by discontinuance of street within which said land was located — market value.**

The commissioners of taxes and assessments of the city of New York in fixing the value of a plot of vacant land entirely within the lines of a former street which has now been closed and discontinued, should take into account the depressing effect upon the value of said land of an assessment to be made for the benefits conferred by the closing of the street.

The market value of real estate is what a purchaser who is not compelled to buy will pay under ordinary circumstances to a seller who is not compelled to sell.

APPEAL by the defendants, Lawson Purdy and others, from an order of the Supreme Court, made at the Bronx Special Term and entered in the office of the clerk of the county of Bronx on the 22d day of March, 1917, reducing an assessment for taxation for 1915 upon real property in the borough of The Bronx.

*William H. King* of counsel [*Isaac Phillips* with him on the brief; *William P. Burr, Corporation Counsel*], for the appellants.

*Harold Swain*, for the respondent.

SHEARN, J.:

The proceeding is a certiorari to review the action of the commissioners of taxes and assessments relative to the assessment of a plot of vacant land in the borough of The Bronx. The lot is irregular in shape and is located on the north side of Rockwood street, between the Grand Boulevard and Concourse and Walton avenue. It lies entirely within the lines of a certain former street known as Fifth avenue which was closed and discontinued pursuant to chapter 1006 of the Laws of 1895. It appears that a portion of the old avenue, originally known as Fifth avenue and later adopted as a proposed public street by the park department map filed in 1878, was a public street and was used as such until it was closed and discontinued pursuant to the terms of the Street Closing Act. This old street ran diagonally through the permanent block shown on the final maps as bounded on the south by Rockwood street, on the west by Walton avenue, on the north by Hawkstone street and on the east by the Grand Boulevard and Concourse. The particular lot number is a portion of the old street bed fronting on Rockwood street. Before the adoption of the final maps the lots were shown as rectangular lots facing on streets shown on the map of Mount Eden, which was a property owners' map prepared and filed in 1854, pursuant to which the property was sold. On that map Walnut street and certain avenues (among which was Fifth avenue) were the only streets shown and the lot owners acquired easements of light, air and access over Fifth avenue. Fifth avenue, as shown on the map of Mount Eden, was

adopted by the municipal authorities as a public street and in or about the year 1878 became such by the filing of the park commissioners' map. This map, however, was not, finally adopted, as in 1895 the maps known as the final maps were adopted. The final maps showed the permanent block which I have mentioned with Fifth avenue as a street which it was proposed to close and discontinue. In pursuance of the Street Closing Act, in accordance with which the final maps were filed, the portion of Fifth avenue within the block in question became closed and discontinued when the first permanent street surrounding the block was physically opened. This was Walton avenue, the physical opening of which took place on January 15, 1906. The effect of this was to extinguish and destroy all of the outstanding easements, leaving to the owners of land abutting on the old street the right to obtain compensation for the damages caused by the closing. (*Barber v. Woolf*, 216 N. Y. 7.) The act provided for the method of assessing these damages back on the property benefited (the land in the street from which the easements had been relieved). It is undisputed that the land in Fifth avenue, including the land in question here, has never been assessed for the extinguishment of the easements in favor of abutting owners within the block in question. Proceedings are now pending wherein various owners of property abutting on Fifth avenue within this block have taken the steps called for by the statute with a view of having their damages ascertained and paid. In due course an assessment will be imposed upon the land in the bed of the street to the extent of its full value. The commissioners of taxes and assessments have laid an assessment for taxation for 1915 of $1,900 on the relator's aforesaid lot. The relator concedes that after this assessment has been imposed the property will have its full normal market value and it will then be properly subject to taxation in the usual way. He contends, however, that until such assessment has been imposed, the value of the property is what it will sell for in the open market, and, since the pendency of the proceedings in question is well known, and since it is practically undisputed that in those proceedings an assessment equal to the then value of the property will be imposed, no one can now be found who will pay more than a

nominal amount for the land and that this should have been taken into account in fixing its value for purposes of taxation.

The broad question then to be determined upon this appeal is whether, in fixing the value of the land for purposes of taxation, the commissioners should take into account the depressing effect upon value of an assessment which is certain to come for benefits already sustained.

It is and must be conceded that the value of the lot, while a part of a public street and before the extinguishment of all easements by the filing of the map, was merely nominal. The evidence shows that the value of the lot, freed from the easements and without regard to the necessity of paying an assessment for the benefits conferred by the closing, is at least the sum of $1,900 at which it has been assessed for purposes of taxation. Section 6 of the act referred to requires that the cost of extinguishing the easements must, to the extent of the resulting benefit, be assessed against the land within the boundaries of the street. The respondent contends that, as was said by Judge CARDOZO in *Matter of City of New York [Grand Boulevard]* (212 N. Y. 538, 545): " Such a liability would detract proportionately from the market value of the fee." It seems obvious that such would be the case. The market value of real estate is what a purchaser, who is not compelled to buy, will pay under ordinary circumstances, to a seller who is not compelled to sell. It is plain that a purchaser in determining the price which he would be willing to pay for this property, knowing it was certain, if the law was followed, that an assessment of say $1,000 would be imposed upon this property, would deduct $1,000 from the purchase price which he would otherwise be willing to pay; otherwise he would pay the $1,000 twice, once to his vendor and again to the city in the form of assessments. In this case the amount of the assessment is not $1,000 or any other fixed sum, for it has not been laid, but the amount will inevitably be measured by the entire benefit conferred upon the lot by releasing it from the easements. Until the assessment is laid the market value of this lot will be precisely what it was before the map was filed, that is to say, nominal. Not only is this clear as a practical matter, but the same conclusion has been reached as a matter of legal reasoning out of the operation of the Street

First Department, January, 1919.          [Vol. 186.

Closing Act, in the opinion of Judge CARDOZO just referred to, where the situation was reversed and involved a situation where the city of New York was being asked to pay the fair value of a street bed from which the easements had been liberated but upon which there had not yet been imposed the correlative assessment for the street closing. It is true that in that and kindred cases the courts were dealing with the owner's interest in the land and not the value of the land for purposes of taxation, but the owner of the land in the *Grand Boulevard* case was owner of the fee. I do not assert that Judge CARDOZO's remarks or reasoning are decisive of the question involved, but they are persuasive and accord with common sense. The corporation counsel quotes authorities holding that actual liens (mortgages, actually imposed assessments, unpaid taxes, etc.) cannot properly be taken into account in fixing assessable value. It is argued that the situation here is similar to that of an owner who makes a mortgage and then seeks to have the assessable value reduced because this is detracted from the interest of the owner. It seems to me that, as argued by respondent's counsel, if the impending assessment for the closing, in the case at bar, had actually been imposed as a lien prior to the taxable date, such authorities would be in point; that when an owner mortgages his property, he voluntarily carves out an interest from his property and transfers it to the mortgagee; that where an assessment is actually imposed upon the property, it is an involuntary taking from the owner of an interest in the property, represented by the lien of the asessment; but that until the assessment is imposed, it is nothing but an impending burden with a depressing effect on value in exactly the amount at which the assessment may be reasonably estimated.

The fear of the corporation counsel that sustaining this view will lead to wide departures from the settled rules and will constitute an invitation to consider in fixing market value for purposes of taxation such elements as the difficulty of disposing of property because the title is held in common or is otherwise involved, or that it will lead to considering the possibility of the value being depressed by contemplated public improvements, or that it will lead to taking into consideration an approaching tax day, is unfounded, for here

is a very special and peculiar case and this decision is strictly limited to the peculiar facts of this case. The facts are peculiar in that we are dealing with a lot which had no more than a nominal value when the city took hold and released the easements. Under the law, however, while the city with one hand released the easements, it was required by the law to impose with its other hand the burden of assessment, thus taking away from the owner, by assessment for benefit, the full value of the benefits conferred. Until the assessment was laid and became a lien, the value created by lifting the easements was purely artificial and illusory. To permit the city to say, " We hereby create a value of $2,000 for this lot, which value, however, you can only get by paying $2,000 for it," and then to lay a tax in the shape of a $2,000 assessment upon this imaginary value is most unreasonable.

The order should be affirmed, with costs.

Clarke, P. J., Laughlin, Page and Merrell, JJ., concurred.

Order affirmed, with costs.