In the Matter of the Application of THE CITY OF NEW YORK, Appellant, Respondent, Relative to Acquiring Title, etc., to the Lands, etc., Required for the Opening and Extending of Inwood Hill Park, in the Borough of Manhattan, City of New York, etc.

INWOOD DOCK, WAREHOUSE & MARKETS CO., INC., and Others, Respondents, Appellants.

First Department, July 1, 1921.

Eminent domain — acquisition of property by city of New York for park purposes — damages — determination of value of property — consideration of adaptability of property to purposes for which it could most profitably be used — damages cannot be based upon speculative and fanciful plan of improvement — reception of evidence of such plan not prejudicial where ignored by court — court governed by same rules as were formerly applied to commissioners in condemnation — award to city based on testimony of experts called by corporation counsel.

In estimating the reasonable market value of property taken by the city of New York for park purposes, the owner is entitled to have considered the adaptability of the land to the purposes for which it could most

profitably be used, but is not entitled to have his damages based upon a plan of improvement that is speculative and fanciful.

But the reception of evidence, as to a speculative and fanciful plan for the construction of apartment houses in a lonely and inaccessible place, which was disregarded by the court, cannot be considered prejudicial, where it does not appear that it influenced the decision, and that the erroneous theory was adopted by the court, and resulted in an award which is an injustice to one party or the other.

The mere fact that the court did not accept the testimony of the city's experts as to value does not show that it was influenced by the fanciful and speculative plan presented by the claimants.

The court in these proceedings is governed by the same rules as were applied to commissioners in condemnation prior to the adoption of the amendment to the Constitution and the resulting legislation.

Where an award was made to the city for land owned by it, based upon the testimony of experts called by the corporation counsel, and no evidence to the contrary was offered, the city cannot complain upon the ground that the court did not disregard said testimony and make awards to it on the same basis as to others.

CROSS-APPEALS from a first partial and separate final decree of the Supreme Court, entered in the office of the clerk of the county of New York on the 22d day of June, 1920, upon the decision of the court rendered after a trial at the New York Special Term in condemnation proceedings.

*L. Howell LaMotte* of counsel [*Joel J. Squier* with him on the brief; *John P. O'Brien, Corporation Counsel*], for the City of New York.

*Martin Conboy* of counsel [*Harry B. Chambers* with him on the brief; *Griggs, Baldwin & Baldwin* and *Charles C. Lockwood*, attorneys], for the claimants.

PAGE, J.:

The city of New York instituted proceedings pursuant to a resolution of the board of estimate and apportionment adopted July 27, 1916, for the purpose of acquiring title to the property situated on the west slope of Inwood Hill for a park. The title to the property acquired in this proceeding vested in the city of New York on December 15, 1917, by virtue of a resolution of the board of estimate and apportionment. The first partial and separate final decree embracing the damage parcels involved in this appeal was made pursuant

to a resolution of the board of estimate adopted on April 16, 1920. Inwood Hill is bounded on the south by Dyckman street, on the west by the Hudson river, on the north by the Harlem River ship canal, and on the east by the Dyckman flats, and is formed by two ridges which are separated by a deep ravine extending south from the ship canal. The property acquired in this proceeding is situated on the west slope of the westerly ridge and extends from Dyckman street north to the ship canal. The only access to the westerly ridge is by way of the lower Bolton road, a dirt road varying in width from eighteen to twenty feet, which runs northerly from Dyckman street near the right of way of the New York Central and Hudson River railroad to the property of the Inwood Dock, Warehouse & Markets Co., Inc., which is the most northerly property taken in this proceeding. There is no access to the property by way of any of the streets running west from Broadway north of Dyckman street.

The distance between the westerly and easterly boundaries of the property acquired averages 600 feet, and there is a rise in elevation which varies from 125 to 180 feet in a distance of 600 feet.

Inwood Hill many years ago was used for residential purposes. During the past thirty years it has gradually fallen into disuse for that purpose and is now used for institutions, so far as any use is made of it. The House of Mercy, an institution to which fallen women are committed by the courts, accommodating 108 inmates, was built twenty or thirty years ago. In 1903 the New York Magdalen Home, now known as Inwood House, purchased property and erected a large building which accommodates 110 inmates, to which fallen women are also committed by the courts. An old building located on Bolton road was converted into a home for consumptives and is known as the House of Rest for Consumptives.

The means of transit are the subway which has a station at Dyckman street distant 3,200 feet from the entrance of the lower Bolton road, and the Broadway surface road, 1,520 feet away. The distance along the lower Bolton road to the property of the Inwood Dock, Warehouse & Markets

Co., Inc., is about 2,500 feet. These transit facilities have been in existence since 1906, in which year the subway was extended to Dyckman street. No additional facilities for travel have been furnished to this neighborhood since 1906, nor have there been any improvements made on Inwood hill in the past thirty or forty years except the building of the institutions above mentioned. Since the subway was opened in 1906 about fifteen per cent of the available property in the neighborhood and within easy access to the subway station has been improved.

While the claimants separately own the damage parcels involved in this appeal and they appear by different attorneys, they united for the purpose of presenting a plan of improvement which involved the four properties owned by them and seven or eight other parcels owned by seven or eight different owners.

This plan of improvement was prepared by a landscape architect, Mr. Leavitt, and an engineer, Mr. Wheeler. It involved the construction, regulating, grading and paving of two streets, with sewer systems, which would run through and appropriate parts of the property of the other owners, who had not signified their assent to the scheme and yet were to be saddled with a goodly portion of the expense. On these streets were to be erected large and handsome apartment houses, which could be rented at twelve dollars per room per month, thus returning a handsome revenue to the owners.

This landscape artist and engineer must have received their inspiration from reading " The Gilded Age," for their idea savors very much of Colonel Sellers' plan to cut up a Mississippi plantation into corner lots and sell them at the prevailing prices for such lots on Broadway, New York, and thus realize millions. The fact that there would be no tenants for the apartments in this lonely inaccessible spot did not trouble the landscape architect and the claimants' experts any more than the lack of purchasers troubled the Colonel. The plan was altogether too speculative and fanciful to merit the slightest consideration, and the learned justice at Special Term treated it with the degree of respect it deserved by ignoring it.

In estimating the reasonable market value of the property at the time it is acquired in proceedings of this kind, the

owner is entitled to have considered the adaptability of the land to the purposes for which it could most profitably be used.   But it is to be considered only so far as the public would have considered it if the land had been offered for sale. What the owner is entitled to is the value of the property taken, and that is what it is fairly believed a purchaser in fair market conditions would have given for it in fact; what a purchaser, who is not compelled to buy, would pay under ordinary circumstances to a seller who is not compelled to sell. (*People ex rel. Brown* v. *Purdy*, 186 App. Div. 54, 57; affd., 226 N. Y. 635.)   But he is not entitled to have his damages based upon a plan of improvement that is speculative and fanciful. (*Matter of City of New York* [*Blackwell's Island Bridge*], 118 App. Div. 274; *Matter of Bronx Parkway Commission*, 191 id. 212; *People ex rel. Strong* v. *Hart*, 216 N. Y. 517; *New York* v. *Sage*, 239 U. S. 57.)   The city objected to the reception of the evidence, and moved to strike it out and urges its exception to the rulings of the court as reversible error.   How the reception of evidence that was held to present a speculative and fanciful plan and was disregarded by the justice who tried the case can be considered prejudicial is hard to comprehend. It must appear that it has influenced the decision, that the erroneous theory was adopted by the justice, and resulted in an award which is an injustice to one party or the other. (*Matter of City of New York* [*Croton River Dam*], 129 App. Div. 707, 710; *Silver Creek & Dunkirk R. Co.* v. *Baker*, 18 N. Y. Supp. 331.)   The mere fact that the court did not accept the testimony of the city's experts as to value does not show that he was influenced by the fanciful and speculative plan presented by the claimants.   The court in these proceedings is governed by the same rules as were applied to commissioners in con- demnation prior to the adoption of the amendment to the Constitution and the resulting legislation.   (See Const. [1913] art. 1, § 7; Laws of 1915, chap. 606, adding to Greater N. Y. Charter [Laws of 1901, chap. 466], chap. 17, tit. 4, as amd.)   The court views the property, and as was said in a recent case: " The commissioners, of course, are expected to consider the evidence. But their function is not merely to pass upon the credibility of witnesses, especially experts produced by the parties, or to decide which set of such expert witnesses reveals itself as

more correct in estimate, and then slavishly adhere to that set. The commissioners are to exercise their own judgment, and they may arrive at their conclusion in disregard of the figures of any or all experts. They are ' untrammeled by technical rules of evidence and unrestricted as to their sources of information. * * * They shall be guided by their own judgment and experience, rather than by the opinions of witnesses.' " (*Matter of Bronx Parkway Commission*, 192 App. Div. 412, 418.)

The city owns a part of the property that is involved in this proceeding. The corporation counsel called experts who testified to the value, and as the city was interested both as petitioner and claimant, of course no evidence to the contrary was offered; and the learned justice made the award in accordance with that testimony. The city now complains that he did not disregard that testimony and make awards to it on the same basis that he did to others. The learned justice may very well have assumed that the city was asking only the usable value of the property to it, and that the testimony produced by it showed the true value at which its representatives appraised the property. It may be of course that it was willing to have a value lower than the true one placed on its property if it thereby could secure a lower valuation than the true one on the property of others and thus recoup the city for the loss sustained on its own property. We, however, cannot indulge in such an assumption. We find no error in the allowance to the city of the full amount claimed by it as its damage.

We do not find that the court proceeded on an erroneous theory or that the awards are excessive. The judgment will, therefore, be affirmed, without costs to any of the parties.

Clarke, P. J., Laughlin, Smith and Merrell, JJ., concur.

Decree affirmed, without costs.