THE PEOPLE OF THE STATE OF NEW YORK ex rel. EMPIRE
MORTGAGE COMPANY, Appellant, *v.* JACOB A. CANTOR and
Others, Respondents.

First Department, July 1, 1921.

Taxation — certiorari to review assessments on parcel of real estate
in city of New York — assessments invalid — basis of valuation
of tracts subdivided into plots in undeveloped section unwarranted
— valuation placed on property by disinterested witnesses adopted.

In a certiorari proceeding instituted to review assessments for the purpose
of taxation on two tracts, constituting one parcel of real estate in the
city of New York, an assessment of practically fifty per cent above the
cost price will be set aside as excessive, where in making the assessment
no consideration was given to the sales price of the property or to the
fact that it had been on the market for years without an offer, and where
it appeared that there had been no increase in the value of the tracts
since 1910, and that the property was on a side hill, in an undeveloped
section of the city, and for which assessment justification is sought in
speculative valuations based upon fanciful development and in the sale
of a plot differently situated.

The valuation placed on the parcels by witnesses of experience and without
interest in the matter and whose individual estimates approximated each
other should be adopted as the valuation for the assessment.

APPEAL by the relator, Empire Mortgage Company, from
an order of the Supreme Court, made at the New York Special
Term and entered in the office of the clerk of the county of
New York on the 29th day of October, 1920, confirming after
a trial assessments for taxation upon real property and dis-
missing a writ of certiorari.

*Henry De Forest Baldwin* of counsel [*Franklin Grady* with him
on the brief; *Lord, Day & Lord,* attorneys], for the appellant.

*William H. King* of counsel [*Charles E. Lalanne* with him
on the brief; *John P. O'Brien, Corporation Counsel,* attorney],
for the respondents.

PAGE, J.:

This is a certiorari proceeding instituted to review assess-
ments for the purposes of taxation for the year 1918 on
parcels of improved and unimproved real property situated in
the borough of Manhattan consisting of fifteen separately

438   People ex rel. Empire Mortgage Co. *v.* Cantor.

First Department, July, 1921.          [Vol. 197

assessed lots lying in four blocks as shown on the tax maps, but all comprised within two tracts which have generally been referred to as the Billings property and the Hays property. The two tracts adjoin and constitute one parcel except as divided by streets. With the exception of a parcel west of Riverside Drive lying far below that thoroughfare, the property is bounded on the west by Riverside Drive and on the east by Broadway. The southern boundary is approximately 280 feet north of a line extended from One Hundred and Ninety-second street and the northerly line is from 208 to 250 feet north of Corbin place. The property lying between Riverside Drive and Broadway, with the exception of lot 646 in block 2180, comprises a steep rocky ledge on top of which is some level ground that has been utilized for buildings. On the Billings property there is the Mansion House or Tryon Tower, together with a swimming pool, a garage, a stable which was rented for $6,500 per year, the lodge which rented for $420 per year, and a stone building described as Libbey Castle which rented for $3,000 per year. On the Hays property is the Abbey Inn, a frame building rented for $2,500 per year and a cottage and greenhouses rented for $650 per year, and a cottage and stable on the west side of Broadway rented at $300 per year. These properties were bought by John D. Rockefeller, Jr., to be presented to the city for a park in January, 1917. He paid for the Billings property $750,000 and for the Hays property $500,000. The property was assessed for taxation, the Billings property at $1,276,000, and the Hays property at $573,520, a total of $1,849,520. These properties had been on the market for a number of years with no offers for the Billings property and an offer of $400,000 for the Hays property. An employee of Mr. Joseph P. Day testified that the Billings property had been placed in his hands for sale, that he had tried for more than a year to sell it, sending from 100 to 150 letters to men of wealth, trying to interest them, but had received no offers. He appraised the property for Mr. Billings as of October 1, 1917, at $740,391 and he did not think the property had increased in value. All of the experts agreed that there had been no increase in the value of these properties since 1910. The city's experts testified that they gave no con-

sideration either to the sales price, or to the fact that the property had been on the market for sale for a number of years without an offer, because it was offered as a tract whereas it should have been offered in plots. They admitted that lots could not be sold, but stated that plots suitable for the erection of villas or high class apartments could have been. The lack of transportation facilities did not affect their judgment of the value of this property for the purpose of such a development, for the persons interested could run bus lines even if the traction companies would not extend their lines. That the property was largely on a side hill and that locations for houses would have to be blasted out leaving a precipitous cliff in the rear was rather an advantage because you could train morning glory vines over the rocks, thus giving the effect of living in a bower. We have had occasion to comment on these iridescent dreams as a substitute for present value in the case of *Matter of City of New York (Inwood Hill Park)* (197 App. Div. 431), decided herewith. The city in that case vigorously opposed the acceptance of such a basis for valuation and urged us to reverse the court at Special Term, although the justice had dismissed the whole plan as speculative and fanciful, for fear that his mind might unconsciously have been influenced by the valuations given. Yet in this proceeding we find the city attempting to bolster up an excessive valuation with exactly the same kind of evidence. It is even more absurd in this case than in the *Inwood Hill Park* case, for that was a proceeding in condemnation in which the owners were entitled to receive the highest usable value of their property which was being taken from them by eminent domain; while this is an assessment for the purpose of annual taxation. If the prophetic vision of the city's witness is justified by time, then the city can adjust its valuations for those years upon the conditions as they then exist. Furthermore, this property is less accessible to transportation facilities than was the Inwood Hill Park plot.

Justification is sought for these valuations in the sales of the Bennett plot to the south. But the Bennett property was very differently situated. It was within a few minutes' walk of the One Hundred and Ninety-first street station of the subway, and directly along the line of Broadway, with cross

440   People ex rel. Empire Mortgage Co. *v.* Cantor.

First Department, July, 1921.          [Vol. 197

streets running through it, and it was in a developed neighborhood. There is no basis for comparison of the Bennett property with this property. It might be remarked in passing that the sale of the Bennett property was conducted by Joseph P. Day as appears from the evidence in this case. It also appears that Mr. Billings had this property in Mr. Day's office for sale. If, therefore, this property could have been advantageously sold in separate lots, as was the Bennett property, we may reasonably infer such a course would have been followed.

The Court of Appeals has recently had occasion to consider the argument whether a tract of land should be valued as a whole or " upon the conjectured outcome of a proposed venture in subdividing the property and offering it for sale in lots. The true rule applicable to property situated like that of the relator was correctly stated by Mr. Justice Cullen in *Matter of Daly* v. *Smith* (18 App. Div. 194, 197) where he said: ' It is doubtless true, and settled by authority, that the landowner is not limited in compensation to the use which he makes of his property, but is entitled to receive its greatest value for any purpose. But still it is the market value of the property that is the measure of the compensation. When, therefore, it is sought to show that a tract of land has a use for a particular purpose, it must also be shown that it is marketable for that purpose, or has an intrinsic value.    *    *    * Nearly any tract of land or any farm can be cut up into lots or villa sites. The question is not whether it can be so subdivided, but whether purchasers for the lots can be found, and also how speedily found. For if only small parts can be sold at intervals, and a number of years must elapse before the whole property can be disposed of, it is apparent that it would be unfair to take as a present value of the property a sum only to be realized after a long lapse of time.' The propriety of pursuing the course adopted by the assessors in the present case, therefore, depended upon the question whether the relator's property was presently marketable if subdivided according to their assumption." (*People ex rel. Strong* v. *Hart*, 216 N. Y. 513, 517.)

Contrasted with these speculative and fanciful valuations of the city's experts we have evidence of appraisals made for

seller and buyer at different times, made not for the purpose of testimony, but to advise as to a fair market price. We have a purchaser, who is not compelled to buy, and a seller who is not compelled to sell, agreeing on a price. We have the testimony of experts, whose business is not appraising property for the purpose of litigation but who are engaged as brokers in buying and selling real estate and are familiar with the trend of the values of real estate in this neighborhood. And all of these valuations approximate each other within a few thousand dollars. In our opinion this testimony shows the true market value of the property to-day and the valuation put upon each separately assessed lot by David Stewart should be adopted as the valuation for the assessment of the property for the purpose of taxation for the year 1918.

The order is, therefore, reversed, with ten dollars costs and disbursements to appellant, and the assessment fixed as herein indicated, with costs to the relator.

CLARKE, P. J., LAUGHLIN, SMITH and MERRELL, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and assessment fixed as indicated in opinion, with costs to relator. Settle order on notice.