VERONICA REALTY CORPORATION, Plaintiff, *v.* CRANFORD-LOCHER, INC., Defendant.

Supreme Court, New York County, May 10, 1933.

*H. R. Zeamans*, for the plaintiff.

*Nevius, Brett & Kellogg* [*F. Nevius* and *E. D. Pilz* of counsel], for the defendant.

MILLER, J. From November of 1925 to and including the year 1928 the defendant was engaged under a contract with the city of New York in constructing the subway in and under Central Park West. During a considerable portion of this time the defendant contractor in connection with its construction work permitted certain openings to be made and some materials to remain in the street in front of plaintiff's premises. These openings and this material made it difficult and perhaps impossible for motor vehicles to stop at the entrance of plaintiff's building. The sidewalk in

front of this building had been planked and there was sufficient space for pedestrians to enter or depart from the premises.

Plaintiff contends, however, that the presence of the openings and of the materials, which prevented vehicles from stopping at all places immediately in front of its buildings, constituted an invasion of its easement of access. This contention is urged notwithstanding that the openings may have been necessary during the progress of the work and that the materials had to be in the roadway to facilitate the completion of the work required under the contract between the defendant and the city. No testimony has been submitted by plaintiff tending to establish negligence on the part of the defendant contractor. That there was a diminution in the rental value of nearly all of the property on Central Park West during the progress of the subway construction is reasonably probable, but it is also reasonable to assume that in anticipation of the completion of the subway there was a considerable increase in the market value of all the land on that thoroughfare from the time construction was begun. In consequence, the inevitable inconvenience and annoyance resulted eventually in no damage to abutting property. In the present case the unavoidable inconveniences caused generally to the plaintiff and other abutting property owners were not solely the result of subway construction.

The court takes judicial notice that the construction of subways in the city of New York is under the jurisdiction of the board of transportation and that the construction of street improvements is under the jurisdiction of the borough president. Having determined to build the subway and having authorized the narrowing of the sidewalks and the relocation of the street car tracks for the purpose of relieving traffic congestion and improving the appearance of the street, the city directed that all this work be performed simultaneously. It is fair to assume that as the surface of the street was to be disturbed in connection with the subway construction, it was deemed wise to make the street improvements at the same time, and for that reason all three improvements were embodied in one contract.

Under the circumstances, in the absence of proof that the contractor was guilty of trespass or negligence, the presence of the openings and of the materials did not constitute an invasion of the easement of access, nor are damages recoverable because of their existence. (See *Farrell* v. *Rose*, 253 N. Y. 73; *Germenten* v. *Bradley Contracting Co.*, 186 App. Div. 868.) " As an adjoining property owner, the plaintiff had the right to use the street and highway in front of his premises, subject at all times to the reasonable control and regulation of the municipal authorities, and to

work in the street necessary for its repair and maintenance, or for the construction of other public utilities  *  *  *. The inconvenience and damage which a property owner suffers from these temporary obstructions are incident to city life and must be endured. The law gives him no right to relief, recognizing that he recoups his damage in the benefit which he shares with the general public in the ultimate improvement which is being made. The law, however, does afford him a relief, if the city or a contractor interferes with the highway without authority; or, if acting legally, prolongs the work unnecessarily or unreasonably. The obstruction of streets and highways or the work carried on in them of a public nature must be reasonable and necessary for the public improvement which is being made." (*Farrell* v. *Rose, supra,* 73, at p. 76.)

To what extent the interference with the approach of vehicular traffic to plaintiff's premises was caused by the widening of the roadway and the relocation of the street car tracks does not appear, and while there is a scintilla of evidence of loss of rentals resulting from the inconvenience and annoyance caused by the construction of the subway, there is, however, no evidence of the diminution in rental value solely by reason of the interference with traffic approaching the premises, even assuming that the presence of the openings and of the materials were unnecessary and unreasonable. The evidence establishes, however, that the openings in front of plaintiff's premises and the location there from time to time of materials did not constitute an unreasonable and unnecessary method of construction. It is not disputed that the settling of the building from five-eighths of an inch to one and one-half inches prior to July, 1928, was caused by the construction of the subway. The record, however, is barren of any proof of pecuniary damage by reason thereof. The plaintiff claims that the foundation was built to carry a five-story building and that the method adopted in underpinning the building had diminished the carrying capacity of the foundation so that it is not capable of carrying a five-story building, though it is of sufficient strength to support the present structure. The height of the building has not been increased, nor is there evidence of any intention to increase its height either at present or in the future; there is some evidence that in order to increase the height of the building to the extent of three additional stories the existing foundation must be reinforced and that the cost thereof will be the sum of $40,000. It follows that if there is no increase in height no expenditure will be required. As bearing upon the question of decrease in market value, the owner is privileged to offer evidence that the original condition of

the foundation permitted an increase of three stories, whereas its present condition does not permit of such increase. Assuming that in doing the work damage did result to the existing foundation so that it is not adaptable to a building of five stories, the amount allowed as damages would be the diminution in the market value of the whole property by reason of the injury to the foundation. The measure of compensation would, therefore, be the difference between the market value before and after the carrying capacity of the foundation was diminished. (See *N. Y. Central R. R. Co. v. Maloney*, 234 N. Y. 208, at p. 218; *Matter of City of N. Y. [Inwood Hill Park]*, 197 App. Div. 431; *Evelyn Bldg. Corp. v. City of N. Y.*, 257 N. Y. 501, at p. 509.) No testimony showing any decrease in the market value has been submitted. I find, however, that the plaintiff has not established that the underpinning of the building was done improperly or that the carrying capacity of the foundation has been diminished. As to this claim the evidence preponderates in favor of the defendant.

The parties having stipulated that the physical damage amounts to $1,300, I direct judgment in favor of the plaintiff in this amount. As to all other items claimed by the plaintiff the complaint is dismissed.