Estate of Melbert B. Cary, Jr., Deceased, Mary Flagler Cary and Edward S. Bentley, Executors v. Commissioner.
Estate of Melbert B. Cary v. Commissioner
Docket No. 8848.
United States Tax Court
1948 Tax Ct. Memo LEXIS 81; 7 T.C.M. (CCH) 731; T.C.M. (RIA) 48212; September 30, 1948
*81 Fair market value determined of two farm and wood land properties, and of 1,442 acres of country real estate assembled for an unusual home site. Bruce Bromley, Esq., for the petitioners. Walt Mandry, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined originally that there is a deficiency in estate tax in the amount of $73,782.48. In an amended answer, the respondent has made claim for increase in the deficiency in the amount of $2,337.01, pursuant to section 871(e) of the Internal Revenue Code. The increase in the deficiency is due to the discovery by the executors after the filing of the estate tax return of an additional asset of decedent's estate. That asset is a remainder interest *82 in securities which were bequeathed to the decedent by will of his mother. The parties have stipulated that the interest under the mother's will is includible in the decedent's estate; that the value thereof at the optional valuation date was $6,659.80; and that the above amount may be added to the value of the gross estate. No part of such remainder interest was reported nor added to the gross estate by the respondent in his original determination of the deficiency. Petitioners now concede that the respondent was correct in disallowing a deduction on account of a gift which was taken in the return as a deduction for a charitable contribution. The petitioners have paid additional administration expenses since the estate tax return was filed for which the estate is entitled to receive deductions. The parties have stipulated that the estate is entitled to deductions for additional attorneys' fees and expenses. Effect will be given in a recomputation under Rule 50 to the concessions of the petitioners and the stipulations. Petitioners alleged in the petition that the respondent erred in failing to allow as a deduction a deficiency in the income tax liability of the decedent for *83 the year 1938. This allegation of error presents an issue which the parties are agreed is dependent upon this Court's determinations in another proceeding which is now pending before this Court, namely, Estate of Melbert B. Cary, Jr., Deceased, et al., Docket No. 12052, which is consolidated with the proceeding of Mary Flagler Cary, Docket No. 12051 [7 TCM 724]. If it is determined that there is a deficiency in the 1938 income tax, the respondent agrees that the estate is entitled to deduction therefor, and that the deduction will be allowed under the Rule 50 recomputation. The only issue to be considered by the Court in this proceeding is the fair market value on the optional valuation date, May 27, 1942, of two parcels of property known as the Sutherland and Whaley farms, and of fourteen parcels of property known as Cannoo Hills. All of the property is located in Dutchess County, New York. The estate tax return was filed with the collector for the fourteenth district of New York at Albany on August 26, 1942. The record in this proceeding consists of a stipulation of facts, exhibits, and testimony. Findings of Fact The facts which have been stipulated are *84 found as facts; the stipulation is incorporated herein by this reference. The decedent, Melbert B. Cary, Jr., died on May 27, 1941. He resided at the time of death at Millbrook, Dutchess County, New York. He was survived by his wife, Mary Flagler Cary, who is an executor of the decedent's estate. Mary Flagler Cary and Edward S. Bentley are the duly appointed and acting executors under the will of the decedent. They are referred to hereinafter as the petitioners. The petitioners elected, pursuant to section 811(j) of the Internal Revenue Code, to have the estate valued as of the optional valuation date, May 27, 1942. The decedent owned at death an undivided one-half interest in fourteen parcels of property, together with certain buildings and improvements thereon, near the Village of Millbrook in Dutchess County, New York, which are known as the Cannoo Hills property, and which comprised about 1,441.98 acres. In this property were eight farms and four wood lands. The property was owned by the decedent and his wife, Mary Flagler Cary, as tenants in common. This property was described as Item No. 1 in Schedule A of the estate tax return. The petitioners *85 reported the value of this property in the return to be $108,000, and the value of the undivided one-half interest of the decedent was reported as $54,000. Near the area of the Cannoo Hills property, about eight miles distant, are two farms, the Sutherland and Whaley farms. The decedent owned this property in its entirety. It was reported in the estate tax return as Item No. 2 of Schedule A at a value of $22,000. The value of the decedent's interests in all of the above property was reported to be the total amount of $76,000. The respondent determined that the value of "Items 1 and 2 of Schedule A" for estate tax purposes was $137,500, and he added $61,500 to the value of the gross estate. In making this determination of value, the respondent did not determine separately the respective values of Item No. 1 and Item No. 2. Sutherland and Whaley farms. The Sutherland property covers 147.2 acres, most of which is pasture land. A one-story frame cottage, 15 X 30 feet, in very poor condition, and a barn and wagon shed, both in very poor condition, are located on the property. The Carys purchased the property in 1932 for $12,217. Since the purchase no repairs have been made to the *86 buildings. The property is not connected with the Cannoo Hills acreage. The fair market value of the Sutherland property on May 27, 1942, was $10,000. The Whaley property covers 73.48 acres. It is wooded land, chiefly. There are no buildings or improvements on the property. It is adjacent to the Sutherland property. It was purchased by the decedent in 1932 for about $7,500. Since the purchase, nothing has been done with the property. The fair market value on May 27, 1942, of the Whaley property was $5,000. Cannoo Hills property. In 1929 the decedent and his wife became interested in acquiring property in the vicinity of the Village of Millbrook, Dutchess County, New York. Millbrook is near Poughkeepsie. There was a piece of property located on a public highway, the Sharon Turnpike, known as the Bacon tract, which appealed to them as a suitable site for an imposing and impressive mansion. This was hilltop property which rose from the highway up to a high point overlooking the surrounding country. At the top of the hill was a flat area covering about one-half acre. The Carys considered the Bacon property as very desirable for the site of their proposed residence upon the hilltop. *87 The property was wooded land with a stream running through it. None of it was suitable for farming excepting an area of about twenty acres which ran along the highway. The Carys developed a plan to purchase the hilltop property and a considerable amount of property around the base of the hill, and with this purpose in mind they began accumulating small properties in 1929. In 1929 they purchased three parcels which covered 22.98 acres as follows: Halstead, 10.6 acres, Lovelace, 4.67 acres; and Pearsall, 8.25 acres. In 1930 they purchased the Bacon property which covered 114.61 acres. Also, in 1930 they purchased eight parcels covering 1,240.25 acres. The parcels purchased in 1930 were as follows: Knapp, 171.63 acres; Henry, 193.60 acres; Pettit, 179 acres; Hall, 128.04 acres; Conover, 140 acres; Chase, 218.51 acres; Crear, 86.47 acres; and Badgley, 123 acres. Thereafter, the Carys purchased the Lovelace farm, covering 46.14 acres, in 1931; and the Humphrey property covering 18 acres, in 1934. Altogether, fourteen parcels of wooded and farm lands were accumulated during 1929 to 1934, inclusive. The parcels selected were contiguous to each other in the end, and the purpose of acquiring *88 the particular parcels was to obtain contiguous parcels. Of the fourteen parcels, four were chiefly wooded lands - Bacon, Halstead, Lovelace lot, and Pearsall; and eight were farms. At the time of the purchase most of the farms were being operated as dairy farms. The acreage of the farms was 1,304.39 acres, of which only about 480 acres were tillable, and the rest was pasture and wood land. Some of the farm land was poor; some was fair. There were some old barns and other farm buildings; and frame houses on the farms when they were purchased. According to the deeds, the ten properties were in the condition shown in the following descriptions at the time of purchase: "Lovelace farm, 46.14 acres. One-half of this acreage was tillable and the balance was wood land. There was a two-story frame house, 25 X 40 feet; arranged for eight rooms. The only improvement was electricity. The other structures on this property consisted of a one-story frame cow barn and hayloft, 20 X 100 feet; a one-story frame wood shed; a one-story frame garage and wagon barn; and a one-story tool shed. "Knapp place, 171.63 acres. Most of this property was wood land; located on it was a one and one-half story *89 and basement frame building, arranged for sevenrooms, which was in such poor condition that it was about to be demolished; there were also a frame open shed which was in very poor condition, and a one-story frame barn which was also in very poor condition. This property had electricity but no other improvements. "Henry place, 193.60 acres. Half of this acreage was tillable and the balance was pasture and wood land. The property had electricity but no other improvements. The building consisted of the following: A one and one-half story frame dwelling arranged for seven rooms, 20 X 40 feet; a one-story frame milk house, 10 X 12 feet; a two-story hay and cow barn, 40 X 60 feet; and a two-story frame tool shed and garage, 25 X 25 feet. "Pettit property, 179 acres. One hundred acres were tillable and the balance was pasture and wood land. This property had no electricity and no improvements. The structures on the property were as follows: A one and one-half story basement frame dwelling, arranged for ten rooms, 20 X 63 feet, which was in very poor condition; a two-story frame wagon shed, 25 X 30 feet, which was in very poor condition; a two-story frame cow barn and silo; and a one-story *90 frame wood shed. "Hall property, 128.04 acres. Fifty acres were tillable and the balance was wood land and pasture. The structures on this property are as follows: A two and one-half story frame building arranged for twelve rooms and one bath; hot air heat, 20 X 40 feet, which was occupied by a superintendent; a one-story frame wagon shed and garage, 18 X 30 feet; a one-story frame barn 20 X 30 feet; and a one and one-half story frame barn, 35 X 25 feet. "Conover property, 140 acres. Half of the acreage was tillable, and the balance was pasture and wood land, and a gravel bank. The structures located on this property were as follows: A two-story and attic frame building, arranged for eight rooms, and one bath, with no improvements; a frame cow and hay barn, an open wagon shed, and a wood shed. "Chase property, 218.51 acres. Forty acres were tillable and the balance was wood land and pasture. The buildings on this property were as follows: A one and one-half story frame dwelling, 20 X 25 feet, without improvements; and a one and one-half story frame dwelling arranged for six rooms, 25 X 33 feet, without improvements; a frame wagon shed, and a frame barn which was in very poor *91 condition. On this property there were two tenants. "Crear property, 86.47 acres. One-half of this land was tillable and the balance was wood land and pasture. The structures on this property were as follows: A two-story frame building arranged for eight rooms and one bath, but without other improvements, 20 X 40 feet; a one-story frame bungalow arranged for two rooms, 10 X 14 feet, without improvements; and an old one-story frame barn. "Badgley property, 123 acres. Fifty acres were tillable and the balance was pasture and wood land. The structures upon this property were as follows: A two and one-half story frame dwelling arranged for fifteen rooms, wired for electricity, but no other improvements, 30 X 60 feet, which was in very poor condition. At sometime it had been an old inn. Also, a one and one-half story frame cow and hay barn which was in very poor condition; another barn which was in very poor condition; and a one-story frame corncrib. "Humphrey property, 18 acres. One-half of this land was tillable and the balance was wood land and pasture. On this property was a one-story frame bungalow, 10 X 30 feet, without improvements, and a one-story open frame shed." The Crear *92 property had not been cultivated and operated as a farm for many years prior to the Carys' purchase. The wood lots were not on highways and were reached only by rights of way across adjacent lands. The Bacon hill property had not been sought after but had been held for many years by the former owner; nobody had wanted to buy it. Most of the Pettit land was a low swampy area; and part of the Chase land was the same. The Humphrey property had not been farmed and was grown over with brush except for a small garden plot; and the cottage on this land was of poor construction with a tarpaper roof and suitable only for a summer camp. After the Carys acquired the above ten properties, they did not operate them or keep them under cultivation, with the exception of one, the Conover farm, which was operated and cultivated by a tenant. During the thirteen-year period, 1929 to 1942, or the length of time after the purchase of each parcel up to the optional valuation date, the eight farms were left to grow over with bush and shrubs, and the buildings were not kept in repair but were allowed to deteriorate. The house and barn on the Knapp property were taken down before May 1942. The Hall property *93 was kept in better condition than the other properties because someone lived there during the period. In May of 1942 expenditures of considerable amount would have been required to remove brush with chains or bulldozers from the tillable parts of the farms, and to repair the dilapidated buildings. The cost of removing the overgrowth would have been about $50 per acre. The Carys purchased all of the above property for a total sum of $160,379, during the period 1929 to 1934. As they purchased property it became known that they were accumulating acreage, most of which was purchased in one year, 1930; and the sellers charged rather high prices, so that the acreage was acquired at some premium. The acreage around the Bacon hill property was acquired by the Carys for two purposes, to keep the surrounding land free from undesirable structures and occupancy which might mar the vista from the top of Bacon hill; and to assure privacy and protection to their proposed home site on the top of Bacon hill. Although the Carys considered the Bacon hilltop a desirable location for an imposing residence, it was in fact an isolated and unusual site for a house. Water would have to be pumped from *94 the base of the hill to the top for both domestic and garden uses, necessitating the digging of wells, the laying of a pipe line system and the installation of tanks and pumps. The approach to the top of the hill required constructing a road from the Sharon Turnpike for about one mile up the hill. The location was inaccessible compared to the usual kind of location. The house which was contemplated has not been constructed to date, nor has any of the construction thereof been started. However, during the ten years prior to the death of the decedent in 1941, substantial expenditures were made on the Bacon hill property for electricity, water supply, and a road and bridge to the top of the hill. Trees were planted along Sharon Turnpike, other planting was done for landscaping, and a terrace was made on the flat area at the top of the hill. Two wells were dug at the bottom of the hill. A pump house and water tank were put up, and pipe lines were laid over the surface of the land, eight-inch pipes being used. An electric transmission line was re-routed, and an electric connection was made. In 1936 and 1937 a rock and gravel sub-base road, about one mile long, was constructed at a cost *95 of $50,504. In 1938 and 1939, a massive steel girder and stone bridge, with stone walls was built over the creek on the property at a cost of $33,975. The road and bridge were to be the approach to the proposed house, and the road led nowhere else. All of the above preparations for water, electricity and transportation were for the purpose of providing the services of such utilities to a house, and the cost of the installations was large in proportion to the plan for an elaborate house. The total cost was $122,930, as follows: Wells, $3,452; pump house, tank, pipe lines, $12,623; terrace, $553; electric connections and transmission line, $4,657; planting of trees and landscaping, $17,166; road and bridge, $84,479. In 1932 the Carys built a small shingled teahouse on the top of the hill for their convenience, but not for a dwelling, at a cost of $6,248. It covered 30 square feet and was arranged for two rooms and a lavatory. Furnishings cost $1,191. Including the teahouse, the total expenditures were $130,369. The expenditures for the road and bridge were extraordinary and beyond ordinary requirements; they were special and in proportion to a plan for an expensive construction of *96 a residence, which was not carried out. The other expenditures for water, electricity and landscaping were special and part of a plan which did not materialize. In 1942, Dutchess County assessed property under an equalization rate system approved by the state on the basis of 50 per cent of the sound value of the property. The Cannoo Hills property, 1,441.98 acres, was assessed at a value of $44,000. The fair market value of the Cannoo Hills property on May 27, 1942, did not exceed $140,000; and the one-half interest therein of the decedent had a fair market value of $70,000 on the above date.
Opinion The issue in this proceeding requires that three determinations of fair market value shall be made, two for separate pieces of property which are known as the Sutherland and Whaley properties, and the third for acreage which is conveniently called the Cannoo Hills property. It is concluded, and found upon consideration of all of the evidence, that the fair market values, respectively, of the Sutherland and Whaley properties, in which the decedent owned the full interest on May 27, 1942, were $10,000 and $5,000. These values are supported by the opinion of a well qualified expert *97 witness who was familiar with the two properties, who sold the property to the decedent in 1932, and who is well acquainted with comparable property in the area in which the two properties are located. The Whaley property is not a farm; it is unimproved wood land. The value of the Sutherland property is primarily in the value of the land. The respondent did not determine a value for these two items, separate from the one-half interest of the decedent in the other properties, and he did not offer any evidence. The petitioners' evidence is not controverted as to these pieces. Although the petitioners reported the value of the two properties as $22,000 in the estate tax return, they now rely upon the evidence relating to value which has been adduced. This they may do, for they are not "concluded by the value placed upon this property in the tax return." Union National Bank of Pittsburgh v. Driscoll, 32 Fed. Supp. 661, 662. The chief question for determination is the fair market value of the acreage which is called the Cannoo Hills property. The decedent owned an undivided one-half interest in the property. The parties agree that the value of the half interest for estate *98 tax purposes is one-half of the fair market value of the entire property. Cf. Adelaide McColgan, Administratrix, 10 B.T.A. 958, 960; William R. Stewart, Jr., et al., Executors, 31 B.T.A. 201, 205. The petitioners reported the entire value to be $108,000, and the value of the decedent's one-half interest as $54,000. The respondent determined that the value of the decedent's one-half interest in the Cannoo Hills property and entire interest in the Sutherland and Whaley properties was the total amount of $137,500; and no allocation of that amount to the one-half interest in the Cannoo Hills and to the entire interest in Sutherland and Whaley was made either in the statement and explanation attached to the deficiency notice, or on brief. Petitioners ask this Court to make a determination of the fair market value of the Cannoo Hills property on May 27, 1942, the optional valuation date, upon the evidence. They contend that the value was not more than $108,000. The petitioners offered evidence under their burden of proof. The respondent did not submit any evidence. On brief, he contends that the petitioners' evidence fails to overcome the statutory presumption *99 of correctness of his determination of value, and asks that his determination be sustained. The record contains the cost of each unit of property and the amounts expended upon the Bacon hill property after acquisition; and the prices at which small properties comparable to each unit in the entire assemblage were sold in 1941 and 1942. There is some evidence of a sale of a large amount of acreage in 1940, 2,562 acres, with a main residence, 22 tenant farm houses, barns, and a herd of cattle, by an owner named Duke. That property was located in the vicinity of the Cannoo Hills property. The property was sold for $76about an acre, or $190,000, exclusive of the herd of cattle. The sale of the Duke property was the only sale of a tract as large as the entire acreage of Cannoo Hills which was made close to the valuation date. One of the petitioners' witnesses was well acquainted with the real estate sales in the Millbrook area over a long period of time and testified that there were no other sales of such size around the critical date, and that purchases of large holdings were not made in the area in 1942, a war year. Both of the expert witnesses for the petitioners testified that the *100 parts of the acreage in question were not of the same value per acre, and one of the witnesses arrived at an average value of $75 per acre for the entire acreage. The respondent by his omission of any explanation of his determination of value does not show what consideration he gave to the expenditures which were made at various times on the Bacon hill property, or whether he considered that such expenditures served to increase the value of the entire acreage or of the Bacon property itself; and his election not to offer any rebuttal evidence leaves the matter in the dark. On brief, the respondent does not make any contention on the matter of the additional expenditures other than by reference to the amount of the total investment which was made. Respondent's contention is, in substance, that the fair market value in 1942 of the entire acreage was greater than the cost of the acreage itself and he apparently asks this Court to give consideration to the amount of the entire investment. Respondent's argument is devoted entirely to criticism of the opinions of value of the petitioners' witnesses In arriving at the ultimate finding of fair market value of the Cannoo Hills property, *101 we have considered all of the evidence and have accorded to the opinions of value of the petitioners' expert witnesses the weight to which, in our best judgment, they are entitled to receive. In our consideration of the entire record, attention has been given to the factors which each expert considered, and we are satisfied that each one, in arriving at his opinion of fair market value on May 27, 1942, has taken into account fairly the state of market values of real estate in the Millbrook area in 1942, everything pertinent thereto having been considered. In the determination of the fair market value of property, we must assume the existence of a willing seller and a willing buyer, both familiar with the facts and arriving at a point of agreement of value upon which a transaction of sale could be made. James Couzens, 11 B.T.A. 1040, 1162; Estate of Henry E. Huntington, 36 B.T.A. 698, 705. The property to be valued comprises 1,442 acres of country real estate in which the original parcels as now assembled constitute a large unit of contiguous property. The acreage was assembled for the purpose of constituting one unit, or estate. The property is raw land, *102 unimproved for the most part, some of which is wood land and some of which is farming and grazing land. We must assume that the postulated willing buyer and seller are able to agree upon a value, taking into consideration certain farm buildings which were located on parts of the land, and the "improvements" made on the Bacon property which, except for the teahouse, have no fair market value in themselves because they are attached to the land. Petitioners rely upon the opinions of value of two competent and qualified expert witnesses. One of petitioners' witnesses has had a long experience in the real estate business in the Millbrook area in Dutchess County and was thoroughly familiar with all of the property in question, and with transactions in property in the vicinity over a long period. He is a man of ability and standing in the locality. He has been in the real estate business in Millbrook for twenty-two years and in this period has sold over two million dollars of real estate, averaging sales of $100,000 a year. In addition he has been president of the Bank of Millbrook for ten years, and much of the business of the bank is lending money secured by real estate mortgages. He *103 owns and farms property near Cannoo Hills. His qualifications were not questioned by the respondent, nor was his testimony weakened by cross-examination. He took into consideration the costs of the parcels, the condition of farm buildings and of the property after twelve years, more or less, of disuse; the expenditures upon the Bacon hill property and the nature thereof, and sales of property in the vicinity during 1941 and 1942. He stated that the market in 1942 for a tract of 1,442 acres was limited, and was more limited than the market was for parcels of 150 to 200 acres, more or less. The second witness of the petitioners has engaged in the business of appraising real and personal property for twenty-three years. He had previously appraised estates in Dutchess County and was familiar with property in the Millbrook region. He inspected the property known as Cannoo Hills. He took into consideration sales of comparable property in 1940, 1941 and 1942 in the vicinity. His qualifications were not questioned by the respondent and his opinion withstood cross-examination. Estate of Henry E. Huntington, supra. It is our conclusion that the opinions of both of the expert *104 witnesses of the petitioners are entitled to consideration. They are corroborated by evidence relating to sales of property in the vicinity which were made close to the valuation date. See Estate of Henry E. Huntington, supra, at p. 705. Consideration has been given to all of the evidence. Several factors, to which each party has drawn our attention, have been considered, as follows: Cost at the various times of purchase when the parcels were being assembled about twelve years prior to the valuation date; the condition of the property in 1942; the location of the building site; the expenditures upon the Bacon tract. Since the evidence shows that a system is followed in Dutchess County of assessing taxes on real property on the basis of an assessed valuation which is fifty per cent of sound value, some consideration has been given to the 1942 assessed valuation of the property. See The Troxel Manufacturing Co., 1 B.T.A. 653. With respect to the expenditures which were made on the Bacon property in contemplation of building a residence which, however, was not built, the evidence shows that the expenditures were unusual in amount, being in proportion to a plan *105 for a large and expensive mansion. Also, except for the teahouse, they were for utilities and a rather splendid approach to the house which was planned. The value of the expenditures is correlated to the existence of a residence and its utilization of the various facilities for which the expenditures were made. Most of the facilities had no value in and of themselves. They were attached to the land, and they had lain dormant for several years prior to May 1942. Since their value lay in the use which could be made of them, their value in the absence of use is speculative. There is considerable authority which indicates that care should be exercised in the matter of the weight which may be given properly to speculative factors in the valuation of real estate, as in the valuation of other property; and such care has been exercised in our present consideration of the expenditures on the Bacon property as a factor which enters into the determination of the fair market value of the property in question. Cf. Guggenhein v. Helvering, 117 Fed. (2d) 469, 473; In re Inwood Hill Park, 189 N.Y.S. 642, 645; People v. Cantor, 189 N.Y.S. 646; aff'd., 138 N.E. 425. *106 However, we are of the opinion that the element of value derived from the expenditures on the Bacon property was given too little weight by both of the expert witnesses of the petitioners. Upon the evidence which is before us, it is our duty to make an approximation of the value which the expenditures gave to the property which is to be valued. Cf. George M. Cohan, 39 Fed. (2d) 540, 544. The respondent did not call any expert witnesses, and he offered no evidence to controvert or rebut the evidence of the petitioners. The only evidence which the respondent offered is a letter dated May 8, 1939, which was written by one of petitioners' witnesses in explanation of his appraisal "of the hurricane loss sustained by Mr. Cary on his estate known as Cannoo Hills." The letter does not purport to be an appraisal, as of March 1939, or about that time, of the fair market value of the Cannoo Hills property, and it does not, in our opinion, controvert the testimony on fair market value in May 1942, of the witness. It was open to the respondent to offer rebuttal evidence upon the presentation of considerable evidence by the petitioners' Union National Bank of Pittsburgh v. Driscoll, supra; *107 Montana Railway Co. v. Warren, 137 U.S. 348, 354. Respondent contends that the fair market value of the property was about twice the maximum value for which the petitioners contend. After the petitioners had presented evidence in support of the value which they contend was the maximum value of the property at the critical date, the respondent had to consider whether he would offer rebuttal evidence. See Whitney v. Commissioner, 73 Fed. (2d) 589; and Andrews v. Commissioner, 135 Fed. (2d) 314; certiorari denied, 320 U.S. 748. Respondent failed to offer any evidence. Upon the entire record, it cannot be concluded that the respondent's determination of value should be sustained for failure of the petitioners to meet their burden of proof. Upon all of the evidence, it has been found as a fact that the fair market value of the Cannoo Hills acreage did not exceed $140,000 in May 1942, and that the value of the decedent's one-half interest was $70,000. Decision will be entered under Rule 50.